[No. 4950.    Decided March 25, 1904.]

GEORGE TAYLOR, JR., *Respondent,* v. CHANDLER HUNTINGTON *et al., Appellants.*[1]

COURTS—JURISDICTION—TAXATION—SPECIAL PROCEEDINGS TO ENFORCE LIEN—PRESUMPTIONS IN AID OF JURISDICTION—VACATION OF JUDGMENTS. Where special and summary powers are conferred upon courts of general jurisdiction for the enforcement of tax liens, the judgment therein imports the same verity, and raises the same presumption as to the facts essential to jurisdiction, as in the case of judgments in the ordinary course of the common law by a court of general jurisdiction, there being no valid reason for any distinction, under our constitutional provisions respecting the jurisdiction of superior courts; and such a judgment will not be vacated because all the steps conferring jurisdiction do not appear in the record.

TAXATION — PROCEEDINGS TO ENFORCE — WHAT LAW GOVERNS. Proceedings to enforce a tax need only conform to the law in force at the time of the commencement of the action.

Appeal from an order of the superior court for King county, Tallman, J., entered July 17, 1903, refusing to

[1]Reported in 75 Pac. 1104.

vacate a judgment entered July 12, 1901, foreclosing a lien for taxes. Affirmed.

*John K. Brown* and *J. A. Kellogg,* for appellants.
*Reed & Rutherford,* for respondent.

DUNBAR, J.—On the 15th day of March, 1901, the respondent George Taylor, Jr., filed with the clerk of the superior court of King county his application for judgment foreclosing a tax lien or certificate of delinquency, issued April 6, 1898, on the real property therein described, for the years 1894-5-6, in the sum of $67.85, and interest. The application alleged the issuance of the certificate, and the payment by respondent, on the 6th day of April, 1900, of the taxes on said property for the years 1897-8-9. There is no allegation of the payment of the taxes for the year 1900. The application also alleges that more than three years have elapsed since the delinquency of said taxes, and their nonpayment, and prays for judgment of foreclosure and sale, etc. The summons and notice were returned by the sheriff of King county with the endorsement that the defendants could not be found, and, on the application of one of respondent's attorneys, service was made by publication. No appearance was made, and on the 12th day of July, 1901, judgment was rendered foreclosing the tax lien, and ordering a sale of the property, which was thereafter sold to respondent, who is now in possession under said sale. On the 18th day of February, 1903, the appellants, the owners of the property, made a motion to set aside and vacate the judgment, for the reason that the same was void for lack of jurisdiction in the court to render the same, which motion was subsequently denied; and, upon appeal from the order denying said motion, the case is now before this court.

The appellants contend that the judgment rendered by the superior court is void for want of jurisdiction in said court to render the same, for the following reasons:   (1) The affidavit of publication of the publisher of the newspaper in which the notice and summons were published does not state that said newspaper, the White River Journal, was printed in King county, as required by § 4878, Bal. Code; § 336, Pierce's Code.   (2) It does not appear in the application for judgment, the recitals in the judgment, or elsewhere in the record, that the respondent (the holder of the certificate of delinquency foreclosed), or any one else, had, before applying for the judgment, paid all the taxes which had accrued on the property, particularly the taxes for 1900, as required by § 107 of the revenue law.   § 8699, Pierce's Code; Laws 1897, p. 188.   (3) It nowhere appears in the record that a copy of the notice was delivered to the county treasurer as required by subdivision 5 of § 96 of the revenue law.   § 8691, Pierce's Code; Laws 1901, p. 385.   (4) The summons published was not in accordance with the statute, and its publication did not confer upon the court jurisdiction to render the judgment of foreclosure herein.

The principle contended for by the appellants, for the purpose of overthrowing this judgment, is that the rule that the judgment of a court of general jurisdiction imports absolute verity, and that all the necessary steps leading up to the judgment will be presumed to have been complied with, does not apply where a court of general jurisdiction has conferred upon it special and summary powers, wholly derived from statutes, and which do not belong to it as a court of general jurisdiction, and when such powers are not exercised according to the course of common law; that, in such case, its decisions must be regarded and

treated like those of courts of limited and special juris-
diction, and no presumption of jurisdiction will attend a
judgment of the court, but that the facts essential to the
special jurisdiction must appear on the face of the record;
the contention being that the superior courts in this state
are courts of general jurisdiction over all cases arising in
the ordinary course of common law or of chancery. And
it is conceded, under the rule announced above, that when,
proceeding within such jurisdiction, they have proceeded
to judgment according to the usual course of such proceed-
ings, their judgments import absolute verity, and raise the
presumption that all the facts necessary to confer jurisdic-
tion exist; but it is argued that the case at bar discloses a
case where the procedure arises under special jurisdiction,
conferred upon the superior courts by the revenue laws of
the state, and that the steps conferring jurisdiction for the
rendering of the judgment must appear in the record.
*Harvey v. Tyler,* 2 Wall. 328, 17 L. Ed. 871; *Galpin v.
Page,* 18 Wall. 350, 21 L. Ed. 959; *McClung v. Ross,*
5 Wheat. 116, 5 L. Ed. 46; *Pulaski County v. Stuart,*
28 Grat. (Va.) 872; and Freeman, Judgments (3d ed.),
§ 123, are cited to sustain this contention.

*Harvey v. Tyler, supra,* does not seem to us to bear out
the contention of the appellants. In distinguishing the
case of *Kempe's Lessee v. Kennedy,* 5 Cranch 173, 3 L.
Ed. 70, from the case under consideration, the court said:

"It is certainly true that there is a class of tribunals,
exercising to some extent judicial functions, of which it
may be said, in the language of Chief Justice Marshall,
that they are [quoting from the case of *Kempe's Lessee*]
'courts of a special and limited jurisdiction, which are
created on such principles, that their judgments taken
alone are entirely disregarded, and the proceedings must
show their jurisdiction;'"

and, after discussing the distinction contended for, said:

"The transcripts of the judgments of exoneration produced in this case, show that there were proper parties before the court, that the subject-matter of the exoneration of the land from delinquent taxes was before it, and that it rendered judgments exonerating it from all delinquent taxes. Can it be required to give validity to these judgments, that the record shall show that every fact was proved, upon which the judgment of the court must be supposed to rest? Such a ruling would overturn every decision made by this court upon that class of cases, from that of *Kempe's Lessee v. Kennedy,* already referred to, down to the present time;"

and the judgment was affirmed.

*McClung v. Ross, supra,* does not seem to us to support the contention claimed, and *Pulaski County v. Stuart, supra,* based its decision upon the fact that the duty of the court was ministerial rather than judicial, saying:

"But where a court of general jurisdiction has conferred upon it special and summary powers, wholly derived from statutes, and which do not belong to it as a court of general jurisdiction, and when such powers are not exercised according to the course of the common law, its action being ministerial only and not judicial, in such case its decision must be regarded and treated like those of courts of limited and special jurisdiction, and no such presumption of jurisdiction will attend the judgment of the court. But in such cases the facts essential to the exercise of the special jurisdiction must appear upon the face of the record."

*Galpin v. Page, supra,* is a noted case, and much is there said which supports the distinction contended for by the appellants, although the main reason for the rendition of the judgment in that case was that verity should not be imputed to a judgment where the service was a service by publication instead of a personal service, and that, where a certain state of facts was shown by the record, it was not competent, in aid of the judgment, to conclude that certain other facts had been presented to the court.

Freeman on Judgments, however, after noticing the cases apparently maintaining the distinction, says, at § 123:

"The doctrine that the judgment of the courts of record are of any less force, or are to be subjected to any closer scrutiny, or that they are attended with any less liberal presumptions, when created by virtue of a special or statutory authority, than when rendered in the exercise of ordinary jurisdiction, has been repudiated in some of the states; and the reasons sustaining this repudiation have been stated with such clearness and force as to produce the conviction that the doctrine repudiated has no foundation in principle, however strongly it may be sustained by precedent;"

citing *Hahn v. Kelly,* 34 Cal. 391, 94 Am. Dec. 742, and *Eitel v. Foote,* 39 Cal. 439, in support of that view, these cases determining squarely that no such distinction exists.

This court, also, has spoken upon this subject, in a case exactly in point, viz., *Kizer v. Caufield,* 17 Wash. 417, 49 Pac. 1064, where *Eitel v. Foote, supra,* was cited with approval, the court saying:

"Now, if the judgment sought to be avoided in this case has the same force and effect as a judgment of the same or a like court in any other action, it follows that, if valid, that judgment and the sale made under it effectually and completely cut off all right and title of the defendant Hawthorne, respondent's mortgagor, to the premises in question; and the said Hawthorne, not having redeemed the same from the sale, had thereafter no interest therein subject to mortgage or sale. And that such a judgment stands upon the same footing as a judgment in an ordinary action seems to us too plain for argument. But we are, however, not without authority upon the proposition. The point was raised and expressly determined in the case of *Eitel v. Foote,* 39 Cal. 439, in which the court said that the validity of the judgment in a tax suit is to be ascertained by the same tests, has the benefit of the same presumptions, and is subject to attack in the same mode and by the same means, as a judgment in an action of any other class."

In discussing this proposition, Mr. Black, in his work on Tax Titles (2d ed.), § 178, concludes:

"It should be remarked, however, that in several of the states, a different view obtains as to the nature of the jurisdiction of the courts in these proceedings. In these states it is held that the statute authorizing such proceedings does not create and confer any special and limited jurisdiction upon the courts, but simply gives to the state, county or municipality, as the case may be, an additional remedy therein to collect its taxes and foreclose its tax liens against certain real property under certain conditions. Thus, the designated courts have a general jurisdiction over the subject-matter. And it follows as a consequence from this view that the validity of a judgment in a tax suit is to be ascertained by the same tests, has the benefit of the same presumptions, and it is subject to attack in the same mode, as a judgment of a court of general jurisdiction in an action of any other class;"

citing *Driggers v. Cassady,* 71 Ala. 529 ; *Young v. Lorrain,* 11 Ill. 637, 52 Am. Dec. 463; *Gunn v. Howell,* 27 Ala. 663, 62 Am. Dec. 785; *Wellshear v. Kelley,* 69 Mo. 343; *Eitel v. Foote,* 39 Cal. 439; *Carlisle v. Watts,* 78 Ala. 486; *Prout v. People,* 83 Ill. 154; *Turner v. Jenkins,* 79 Ill. 228.

And this view must be correct under our constitutional provisions, for it is by the constitution that the jurisdiction is conferred, and, as was forcibly said by Judge Stiles, in *In re Cloherty,* 2 Wash. 137, 27 Pac. 1064:

"The state of Washington is a sovereign whose written constitution is her visible charter. By the constitution all the judicial power (which is a distinct branch of the sovereignty) is vested in the courts therein created, independently of all legislation. The jurisdiction of these courts is universal, covering the whole domain of judicial power, even to that growing out of the supposed existence of municipal ordinances."

But, outside of authority, there seems to us to be no reason which supports the distinction sought to be maintained. The reason why verity is imputed to the judgment of courts that are called courts of general jurisdiction or courts of record, as distinguished from courts of limited jurisdiction or inferior courts or tribunals, doubtless is that courts of the first class are presided over by men who are presumed to be learned in the law, aided and advised by practitioners who are also learned in the law; while courts of the other class are presided over by men of more limited learning and experience. But certainly it is the court upon which the distinction is conferred, rather than the accident of circumstances under which the same court is dealing on different occasions. The judgment of the court is equally entitled to credit whether the jurisdiction is generally or specially conferred. Under the provisions of our constitution the superior court is constituted a court of general jurisdiction, and it remains a court of general jurisdiction in the exercise of all its judicial functions, no matter whether it is exercising its jurisdiction under the provisions of the common law, of the constitution, the probate, or any other branch of statute law. To be compelled to stop to inquire and determine whether the jurisdiction conferred upon the court was a common law power, or whether it was expressly conferred by constitutional or statutory enactment, before the validity of its judgment, or the verity to be imputed to such judgments, could be determined, would be unnecessary, inconvenient, illogical, and confusing, and not in harmony with the spirit of our code and constitution.

In addition to this, the third and fourth objections are answered by the fact that the requirements there spoken of were not made by the law in force at the time of the commencement of the action, and this court has said that the

statute in force at the time an action was instituted governs in all matters of procedure. *Woodham v. Anderson,* 32 Wash. 500, 73 Pac. 536.

The judgment is affirmed.

FULLERTON, C. J., and MOUNT, HADLEY, and ANDERS, JJ., concur.