CRESCENT RING COMPANY, INCORPORATED, A CORPORA-
TION, RESPONDENT, v. TRAVELERS INDEMNITY COM-
PANY, A CORPORATION, APPELLANT.

Argued May 26, 1925—Decided February 1, 1926.

1. An innocent vendor cannot be sued for the fraud of his agent in
   effecting a sale; in such case an aggrieved vendee has only two
   remedies at law—the first, a rescission of the contract and a
   reclamation of the money paid by him to the vendor, or second,
   a suit against the agent founded on the deceit; but a suit based
   upon the fraud practiced by his agent, without his authority or
   knowledge, will not lie against the innocent vendor.
2. *Obiter dictum* is an expression of opinion by the court or judge
   on a collateral question not directly involved, or mere argu-
   ment or illustration originating with him, while *judicial dictum*
   is an expression of opinion on a question directly involved, argued
   by counsel and deliberately passed upon by the court, though not
   necessary to a decision; while neither is binding as a decision,
   *judicial dictum* is entitled to much greater weight than the other,
   and should not be lightly disregarded.
3. *Semble:* A principal is responsible for the fraud or deceit of his
   agent committed in the course of his employment and for the
   benefit of his employer.

4. Where an insurance agent represents that a policy to be issued will contain certain stipulations (which are not unlawful), the policy must contain them or the assured will not be bound to accept it; in such case it is the duty of the insured, when the policy is received, to promptly examine it; and if it does not contain the stipulations agreed upon, to at once notify the company of such fact and of refusal to accept the policy.

5. While one sued for fraud cannot set up as a defense that if the plaintiff had exercised reasonable care he would not have been defrauded, yet, where no active wrong-doing is attributed to the principal defendant, and reliance is placed upon the fraud of the agent, who was not instructed, or actually or impliedly authorized, to commit it, there can be no recovery by a plaintiff who could have protected himself by examining into the character of the transaction and the truthfulness of the representations made, unless the defendant, with knowledge, ratifies it.

On appeal from the Essex County Circuit Court.

For the appellant, *Lindabury, Depue & Faulks* and *John W. Bishop.*

For the respondent, *William Harris* and *Israel B. Greene.*

The opinion of the court was delivered by

WALKER, CHANCELLOR.   For brevity the parties will be called herein the Ring Company and the Indemnity Company.

The Ring Company brought suit in the Essex Circuit against the Indemnity Company on two counts—*first,* in tort for deceit, and *second,* on a parol contract of insurance, which latter was abandoned at the trial.   The first count alleges that Nearing was agent of the Indemnity Company to sell policies and make and enter into contracts of insurance in the name of the company; that on or about December 21st, 1919, he induced the Ring Company to order an office and messenger robbery policy for $2,000 issued by the Indemnity Company, by falsely and fraudulently informing the Ring Company's officers, with whom he dealt, that the provisions were substantially the same as a Lloyd's jewelers' block policy, which the Ring Company desired, and that it would cover the same risks and afford the same

protection, when, in fact, the provisions of the messenger robbery policy differed materially from those of the block policy; that Nearing delivered the robbery policy enclosed in an envelope, in December, 1919, and induced the Ring Company to accept it, whose officers did not read it, but placed it in the safe, and never examined it until May, 1921, after the loss had occurred; that in December, 1920, still relying on the representations of Nearing made over a year before, the Ring Company negotiated a modification of the policy by increasing the amount of insurance from $2,000 to $6,000, receiving a rider to that effect.

On May 1st, 1921, certain jewelry, alleged to have been worth $4,600, was stolen from one of the plaintiff's salesmen. This loss was not covered by the robbery policy held by the Ring Company, but would have been covered by a block policy. The Indemnity Company refused to pay, and this suit was brought to recover the loss. The Indemnity Company's answer denied that Nearing was defendant's agent for the purposes or with the powers alleged in the complaint, but said it employed him only to solicit proposals for insurance, which it accepted or refused as it saw fit; denied that he defrauded or imposed upon the Ring Company; admitted that it issued to that company the robbery policy and rider increasing the amount of insurance; denied knowledge of the alleged theft; stated it had no authority under its charter to issue a block policy, and never issued one; had no knowledge of the making by Nearing of any of the alleged false and fraudulent representations; denied that he had any power to make such representations, and had never ratified his act in making such representations.

The commissioner of banking and insurance of this state issued a certificate reciting that the Indemnity Company had certified to him the appointment of Nearing as its agent for the transaction of business, and, therefore, the commissioner certified that he, Nearing, was duly authorized to act as such agent so far as he might be empowered by the company, until March 1st, 1920. The certificate of his appointment sent to the banking and insurance commissioner

stated that Nearing had been duly appointed agent for the company so far as he might be legally empowered by their letters of appointment, powers of attorney and the instructions which might be given him by the company. His testimony, taken *de bene esse,* was to the effect that he would sell the Ring Company a policy which would give the same "coverage" as a jewelers' block policy. He afterwards delivered a policy known as a messenger robbery policy, not as broad as a jewelers' block policy, receiving a check for payment of the premium and endorsed that over to the Indemnity Company.

The principal reliance of the Indemnity Company is upon the case of *Kennedy* v. *McKay,* 43 *N. J. L.* 288, in the Supreme Court. Chief Justice Beasley in the opinion held that an innocent vendor could not be sued in tort for the fraud of his agent in effecting a sale, saying that in such a case an aggrieved vendee has only two remedies at law—the first, a rescission of the contract and a reclamation of the money paid by him to the vendor, or a suit against the agent founded on the deceit, but that a suit based upon a fraud did not lie against the innocent vendor on account of a deceit practiced by his agent without his authority or knowledge.

Counsel for the Ring Company argues that this doctrine of Kennedy *v.* McKay is *dictum,* and so it appears to be. McKay was sued for fraud and deceit in connection with the sale of forty shares of stock of a company standing in his name on its books, the stock being sold to Kennedy by two persons who represented that it was the property of McKay. And from the evidence it conclusively appeared that McKay was neither the owner of the stock nor had any knowledge that it was in his name, and on these undisputed facts it was held that McKay could not be held liable because he was in no way connected with the transaction, and that the persons who sold the stock were not his agents nor was he their principal.

Having thus disposed of the case, the Chief Justice then observed that, even if it were to be assumed that the stock

was in reality the property of McKay, and that H. & R. were his agents to make sale of it, still it was not apparent on what legal theory the action could be sustained, &c.

Now, was this *dictum judicial* or *obiter?*    There is a decided difference between the two kinds.   *Obiter dictum* is an expression of opinion by the court or judge on a collateral question not directly involved, or mere argument or illustration originating with him, while *judicial dictum* is an expression of opinion on a question directly involved, argued by counsel and deliberately passed on by the court, though not necessary to a decision.   While neither is binding as a decision, *judicial dictum* is entitled to much greater weight than the other and should not be lightly disregarded.   *In re Chadwick's Will,* 80 *N. J. Eq.* 168.   The observation of the learned Chief Justice in Kennedy *v.* McKay was on a question present in the pleading and proofs in the case, and, although not necessary to the decision of the cause, was, nevertheless, *judicial dictum* by a judge of the highest order of ability, and should, therefore, be given the weightiest effect.

In *Reitman* v. *Fiorillo,* 76 *N. J. L.* 815, this court said (at *p.* 816) that the whole subject of the rights of a vendee against an innocent vendor in such case (as this) was discussed by Chief Justice Beasley in Kennedy *v.* McKay, and his statement that the remedy against an innocent vendor is a rescission, and not an action for the agent's fraud, has been accepted as settling the principle in this state, citing cases.   And in *Mick* v. *Corporation, &c.,* 87 *N. J. L.* 607, 613, this court again reiterated the doctrine of Kennedy *v.* McKay.

Counsel for the Ring Company seeks to show that the doctrine of Kennedy *v.* McKay has been departed from, citing *Corona Kid Co.* v. *Lichtman,* 84 *N. J. L.* 363, wherein Mr. Justice Kalisch, speaking for this court (at *p.* 369), said that the objection that the innocent principal cannot be held answerable for fraud of an agent is said to be *dictum* in Kennedy *v.* McKay, which was founded upon the dissenting opinions of Barons Bramwell and Martin in *Udell* v. *Ather-*

*ton,* 7 *H. & N.* 172, and seems to have been followed in *Western Bank of Scotland* v. *Addie, L. R.,* 1 *Scott App.* 146; but in *Barwick* v. *Eng. Joint Stock Co., L. R.,* 2 *Exch.* 265, Mr. Justice Willes said that the general rule is that the master is answerable for every such wrong of the servant or agent as is committed in the course of the service and for the *master's benefit,* though no express command or privity of the master be proved. We do not perceive how this case can help the Ring Company, because the alleged false representations in this case were not made for the benefit, but to the detriment, of the principal. And in this case (Corona Kid Co. *v.* Lichtman) the opinion says that there was evidence from which the jury might infer that the defendant had knowledge of his agent's conduct; that it was a jury question under all the circumstances of the case; and in the sixth syllabus it is laid down that it was not necessary for plaintiff to establish fraudulent conduct of defendant, but it was sufficient that the fraud was committed by defendant's agent *with his knowledge.* Counsel for the Ring Company also cites *Cooley* v. *Perrine,* 41 *N. J. L.* 322; *affirmed,* 42 *Id.* 623, in which the Supreme Court reversed the trial court in giving judgment for the plaintiff, holding that an agent had no actual authority to make the representations made, and that the agent was not vested with apparent or implied authority to make them * * *, and the opinion proceeds to state that that view was not in conflict with the class of cases which hold that a principal is responsible for the fraud or deceit of his agent committed in the course of his employment, for *his employer's benefit.* The same thing is to be said of the case of *Decker* v. *Fredericks,* 47 *Id.* 469, in which the Supreme Court said (at *p.* 472): "Nor does any action arise within the exception noticed in the opinion of the Supreme Court delivered in the case of Cooley *v.* Perrine, namely, that a principal is responsible for the fraud of his agent committed in the course of his employment, for the benefit of his *employer.*"

It is contended that Nearing's statements were not properly admissible to prove either the existence of an agency

or its extent. That is so with reference to his declarations made pending negotiations, but does not mean that he cannot prove his agency, and the extent of it, by his sworn statements at the trial. In this case there is no doubt of the agency. It was proved by his testimony (*Colloty* v. *Schuman (New Jersey Supreme Court)*, 75 *N. J. L.* 97), and the evidence showing that he was appointed by the Indemnity Company, which appointment was notified to the banking commissioner and by him certified. It is true that the appointment was as agent so far as he might be legally empowered by letters of appointment, powers of attorney and instructions, which might be given by the company. However, none such appeared in the testimony in the case, and the limit of his power to bind the Indemnity Company was the apparent authority which it permitted him to assume, or which it held him out to the public as possessing. *J. Wiss & Sons Co.* v. *H. G. Vogel Co.*, 86 *N. J. L.* 618. Now, the Indemnity Company ratified the agency of Nearing in negotiating the very policy it issued to the Ring Company, because of such issuance and receipt of the premium therefor, but there is no evidence that it authorized him to negotiate a jewelers' block policy, and his statement that the Indemnity Company's policy had as broad a coverage was a misrepresentation detrimental to his principal and a moral fraud that was not authorized by it, and, consequently, not binding on the Indemnity Company.

An additional reason urged by appellant for granting the motion to nonsuit, which was overruled, was that the Ring Company had an opportunity to ascertain the extent of the terms of the policy and the truth of the agent's representations, and failed to exercise that right. In support of this, several cases are cited in the United States Supreme Court and in New York and some other states, but none in New Jersey. There is, however, a case in our state which bears upon the principle. It is *Garrison* v. *Technic Electrical Works*, 59 *N. J. Eq.* 440.

In *New York Life Insurance Co.* v. *Fletcher*, 117 *U. S.* 519; 29 *L. Ed.* 934, the Supreme Court of the United

States said (29 *L. Ed.*—at *p.* 940) : "In *American Insurance Co.* v. *Neiberger,* 74 *Mo.* 167, the assured agreed with the agent of the company that the policy to be issued should contain a clause giving him a right to cancel it at the end of a year. The policy issued contained no such clause, but he retained it several months before he returned it. The court, after observing that when the application does not attempt to set forth all the provisions which the policy to be issued must contain, and the agent represents that the policy will contain certain stipulations, which are not unlawful, then the policy must contain them, or the assured would not be bound to accept it. 'But in such case,' said the court, 'it will be the duty of the insured, when he receives the policy, promptly to examine the same, and, if it does not contain the stipulations agreed upon, to at once notify the company of such fact and of his refusal to accept said policy. The policy in this case was issued on the 25th day of January, 1875, and was not rejected by the defendant until May 10th, 1875. If the policy was received by the defendant soon after the date on which it purports to have been issued, we think he waited too long to elect whether he would receive the policy without the stipulation in regard to cancellation, or refuse to accept it because it did not contain such stipulation. After such delay he will be deemed to have accepted the policy as issued.' "

In *Metzger* v. *Aetna Ins. Co.,* 227 *N. Y.* 411, the New York Court of Appeals held that ignorance through negligence or inexcusable trustfulness will not relieve a party from his contract obligations; that he who signs or accepts a written contract in absence of fraud or other wrongful act on the part of the other contracting party is conclusively presumed to know its contents and to assent to them, and there can be no evidence for the jury as to his understanding of its terms. And (at *p.* 415) Mr. Justice Collins observed: "If the insured obtained or held a mistaken view or belief concerning the agreements of the policy, the fraud or negligence of its president and representative was the cause. A mere reading of the policy would have made him and the plaintiff

know the agreements the plaintiff was accepting and entering into. To hold that a contracting party who, through no deceit or overbearing inducement of the other party, fails to read the contract, may establish and enforce the contract supposed by him, would introduce into the law a dangerous doctrine. Of course, the doctrine does not exist."

Now, even if it were to be held that the declarations of Nearing were "deceit and overbearing inducement," that would not have excused the officers of the Ring Company from reading the contract of insurance, because, as was proved in this case, the fraud, such as it was, was not perpetrated by the Indemnity Company—the other party; nor was it authorized by it, nor did it afterwards, with knowledge, ratify it. In this case the Ring Company, before accepting the policy, was perfectly at liberty to examine it and to call in a lawyer or an insurance expert to advise them as to the meaning of its terms and the extent of the Indemnity Company's liability. This they did not do.

While one sued for fraud cannot set up as a defense that if the plaintiff had exercised reasonable care, he would not have been defrauded; yet, where no active wrong-doing is attributed to the principal defendant, and reliance is placed upon the fraud of an agent, who was not instructed, or actually or impliedly authorized, to commit it, there can be no recovery by a plaintiff who could have protected himself by examining into the character of the transaction and the truthfulness of the representations made, unless the defendant, with knowledge, ratifies it. And this the Indemnity Company did not do. It is true that Coburn, the Indemnity Company's secretary, is said to have stated to members of the Ring Company "that if the policy were purchased through a broker, he would be responsible, but if it were issued through an agent of the Indemnity Company, then it would be liable." This seems to have been a mere opinion given by the secretary, but, whether so or not, it does not appear that he had any authority to bind the company or that he intended to do so.

Counsel for the Ring Company, in his brief, says that Mr. Coburn, the Indemnity Company's secretary, on the witness-

stand said that "the company might be bound within certain limitations for the acts of its agents." So it would, and this seems to be an admission that the secretary's statement was a mere opinion, as mentioned above.

On the case made at the trial, which resulted in a verdict and judgment for the plaintiff, the nonsuit moved for should have been granted, and, failing that, the trial court should have directed a verdict in favor of the defendant, as no evidence adduced by the Indemnity Company made a case for the Ring Company entitling it to go to the jury. These views lead to a reversal and the award of a *venire de novo*.

*For affirmance*—THE CHIEF JUSTICE, MINTURN, KALISCH, LLOYD, VAN BUSKIRK, MCGLENNON, KAYS, JJ. 7.

*For reversal*—THE CHANCELLOR, TRENCHARD, PARKER, BLACK, KATZENBACH, CAMPBELL, WHITE, GARDNER, JJ. 8.