743 A.2d 371

BENJAMIN ADEN AND BEATRICE ADEN, PLAINTIFFS–
RESPONDENTS, v. ROBERT F. FORTSH, DEFENDANT–
APPELLANT, AND JOHL & COMPANY, DEFENDANT.

Superior Court of New Jersey
Appellate Division

Submitted September 23, 1999—Decided January 19, 2000.

---

[3] We express no opinion as to whether defendant is entitled to withdraw his guilty plea. That determination must initially be made by the trial court, if and when a motion is made, based upon the record that is developed when any motion that may be filed is heard.

Before Judges BAIME and EICHEN.

*Methfessel & Werbel*, attorneys for appellant (*John Methfessel, Jr.*, on the brief).

*LeBoeuf, Lamb, Greene & MacRae*, attorneys for respondents (*Louis Smith*, on the brief).

No brief was submitted on behalf of Johl & Company.

The opinion of the court was delivered by

EICHEN, J.A.D.

In this action for negligent failure to procure adequate insurance coverage for the interior structure of a condominium unit owned by plaintiffs, the principal issue presented on appeal is whether the trial court erred in refusing to instruct the jury concerning plaintiffs' comparative fault.

These are the relevant facts. In September 1994, after thirty-seven years of residing in Bergenfield, plaintiffs Benjamin and Beatrice Aden sold their house and purchased a condominium unit for $48,000 in Sussex County. Benjamin Aden (Aden), who was a retired building inspector, contacted Robert F. Fortsh to secure coverage for his new unit. Fortsh was a special agent for Prudential Insurance Company and had been plaintiffs' insurance broker for many years, having sold them automobile and home-owners insurance.

Aden and Fortsh spoke a few times on the telephone concerning coverage for the condominium unit. The substance of those conversations was seriously contested at trial. Aden claims he told Fortsh to secure "a policy that would cover any losses [he] might have in [his] condo ... [that he just] wanted coverage." He further stated that Fortsh asked him about the value of the contents and the price of the unit, and that sometime after their first conversation, advised him that the premium would be about $98 per year.[1] Aden testified that Fortsh asked him no other questions and never told him to inquire whether the master deed or the condominium association by-laws provided any insurance coverage for the unit. Aden acknowledged receiving the policy and its renewal, but admits he never read either of them.[2]

---

[1] Aden apparently rejected Fortsh's first premium quote of $120, which necessitated Fortsh's procuring coverage through another agent, defendant Johl & Company, which represented Hartford Insurance Company. Johl & Company paid $500 to plaintiffs to settle the matter and was dismissed as a defendant from the action.

[2] The condominium policy was a type of homeowners policy that provided the following coverage: dwelling—$1,000; personal property—$16,000; loss of

Fortsh contradicted Aden's testimony. According to Fortsh, Aden told him he only wanted "minimum" coverage and acknowledged the $1,000 coverage limitation on interior structural damage. He stated that he fully explained to Aden the type and amount of coverage, claiming he told Aden that plaintiffs would only be covered for $1,000 for interior structural damage, but equivocated on this point during cross-examination. He stated that he told Aden twice to inquire whether there was other coverage provided by the by-laws or in the master deed. Fortsh further testified that he believed Aden would find out what coverage already existed under the master deed or by-laws and advise him if plaintiffs wanted more than the "default" minimum coverage of $1,000 for the interior structure. He further stated that he thought Aden "was very well aware that I would not be looking at the master deed.... My advice was to call the association ... [to] see what you're covered for." Based on his prior experience with condominium insurance, Fortsh stated that he assumed the condominium would indeed provide adequate coverage in case of fire damage to the interior structure of the unit. In fact, no such coverage existed.

On June 26, 1996, a fire damaged the interior structural walls and fixtures of the condominium unit. The cost of repairs was approximately $20,000. After learning of the $1,000 policy limit, plaintiffs commenced this action.

At trial, plaintiffs presented expert testimony that it was Fortsh's duty to know the coverage provided by the master deed and by-laws before issuing a condominium policy, and that he was negligent in issuing the policy without that information. Fortsh's

---

use—$6,400; personal liability—$300,000; and medical payments—$1,000. It is not disputed that the term "dwelling" refers to interior structure, *i.e.*, walls and fixtures.

The condominium policy was an annual policy covering the period September 17, 1994 to September 17, 1995. Plaintiffs renewed the policy for another year commencing on September 17, 1995. The declaration sheet of the renewal policy indicated in large print the various monetary limitations, including $1,000 for damage to the dwelling.

expert presented contrary testimony. He stated that a broker's customary duty is only to explain the nature of the coverage requested and inform the insured to investigate whether the condominium association offered coverage for interior structural damage, and to advise the broker if it did not have such coverage.

Prior to the judge's instructions to the jury, Fortsh submitted written "Requests for Charge," requesting that the jury be instructed concerning plaintiffs' comparative fault based on their failure to read the policy or renewal documents.

The trial judge rejected Fortsh's request for a comparative negligence charge and did not instruct the jury that it could consider plaintiffs' conduct and surrounding circumstances in allocating percentages of fault between the parties. It was the judge's view that unless the jury concluded that plaintiffs were the *sole* cause of the inadequate coverage, Fortsh could not prevail. The only reference to plaintiff's conduct came in the proximate cause portion of the charge where, after defining "proximate cause," the judge stated:

> Now, defendant has offered testimony that the plaintiff Aden's own actions or inactions were the *sole proximate cause* of having virtually no interior structural and fixture insurance coverage for the fire damage to his condominium. If you find that defendant has proven by a preponderance of evidence that plaintiff was the *sole proximate cause* of this lack of insurance coverage, you will find in favor of defendant and dismiss plaintiff's case.

> On the other hand, if you find that the plaintiff has proven by a preponderance of evidence the negligence of the defendant in providing inadequate and incomplete advice and procurement of insurance coverage, and that that was a substantial factor in bringing about the losses that occurred, and that some harm to the plaintiff was foreseeable from the defendant Fortsh's negligence, then you will find in favor of the plaintiff. (Emphasis added.)

After the judge completed the charge, defendant's counsel again requested a comparative fault charge in respect of plaintiffs' failure to read the policy as well as their failure to inquire as to the existence of additional coverage for interior structural damage to the unit. The judge again denied the request. During its deliberations, the jury requested the judge to explain again the

meaning of "proximate cause," and the judge acceded to its request.

The jury returned a verdict finding Fortsh's negligence was a proximate cause of plaintiffs' loss and judgment was entered in favor of plaintiffs in the sum of $20,877.45. The judge denied Fortsh's motion for a new trial, which was based on the judge's refusal to charge comparative negligence to the jury.

On appeal, Fortsh contends that the proximate cause charge and the failure to give a comparative negligence charge to the jury resulted in a miscarriage of justice.

Our review of the record and the arguments advanced, in the light of the applicable legal principles, persuades us that the jury charge was erroneous in that it did not allow the jury to properly allocate fault between the parties. We conclude that this error was "clearly capable of producing an unjust result." *R.* 2:10–2. Accordingly, we reverse the judgment and direct a new trial.

■ One who holds himself out to the public as an insurance broker must exercise reasonable skill, care, and diligence in the execution of his responsibilities. *Rider v. Lynch,* 42 *N.J.* 465, 476, 201 *A.*2d 561 (1964). In *Rider,* the Court stated that an insurance broker

is expected to possess reasonable knowledge of the types of policies, their different terms, and the coverage available in the area in which his principal seeks to be protected. If he neglects to procure the insurance or if the policy is void or materially deficient or does not provide the coverage he undertook to supply, because of his failure to exercise the requisite skill or diligence, he becomes liable to his principal for the loss sustained thereby.

[*Ibid.*]

■ However, an insured's own negligence may operate to avoid a broker's liability for failure to exercise the required skill, care and diligence. *See Schustrin v. Globe Indemnity Co. of New York,* 44 *N.J.Super.* 462, 466, 130 *A.*2d 897 (App.Div.1957) (citing *Restatement of Agency* § 415 comment b (1933)).

In *Schustrin,* the insured failed to read the insurance policy and we held that such failure should be considered on the question of the insured's own negligence. In that context, we stated:

> In an action by a principal against his broker for negligence by reason of his failure to perform an undertaking, *the mere failure on the part of an insured to read a policy does not Per se bar a recovery, but is a circumstance to be considered on the question of the plaintiff's contributory negligence.* The insured may be able to explain satisfactorily his failure to read the policy and show that he exercised that degree of care which a reasonably prudent person would ordinarily use under the same circumstances. 16 Appleman, *Insurance Law and Practice,* § 8834, p. 307.
>
> [*Id.* at 467, 130 *A.*2d 897 (emphasis added).]

■ Indeed, from as early as 1926, the general rule has been that an insured is under a duty to read his policies and to advise his insurance agent if the coverage is inconsistent with his desires. *Martinez v. John Hancock Mutual Life Ins. Co.,* 145 *N.J.Super.* 301, 310, 367 *A.*2d 904 (App.Div.1976), *certif. denied,* 74 *N.J.* 253, 377 *A.*2d 660 (1977) (citing *Crescent Ring Co. v. Travelers Indem. Co.,* 102 *N.J.L.* 85, 92, 132 *A.* 106 (E. & A.1926)).

Despite this well-settled legal principle, plaintiffs argue that *Rider* is the prevailing law in that it states that an insured's failure to read his or her insurance policy does not support a defense of contributory negligence. *Rider, supra,* 42 *N.J.* at 482, 201 *A.*2d 561. We disagree and conclude that plaintiffs' reliance on this "passing" observation in *Rider* is misplaced.

■ In *Rider,* the Court held that the broker's implied misrepresentation to the insured concerning available automobile liability coverage estopped the broker from relying on the insured's failure to read her policy. *Ibid.* This case does not involve a misrepresentation by the broker. In the absence of evidence of such wrongdoing, an insured must examine his or her policy. *See Dancy v. Popp,* 114 *N.J.* 570, 572–73, 556 *A.*2d 312 (1989) (quoting *Harr v. Allstate Ins. Co.,* 54 *N.J.* 287, 309–10, 255 *A.*2d 208 (1969)) ("an insured is chargeable, for reasons of business utility, with knowledge of the contents of a policy," unless fraud or inequitable conduct on the part of the insurer is involved). *See also Sears Mortgage Corp. v. Rose,* 134 *N.J.* 326, 348, 634 *A.*2d 74 (1993)

(observing "[n]ormally, insurance purchasers are expected to read their policies" and " 'the law may fairly impose upon [them] such restrictions, conditions and limitations as the average insured would ascertain from such reading.' ") (quoting *Bauman v. Royal Indem. Co.*, 36 *N.J.* 12, 25, 174 *A.*2d 585 (1961)).

Moreover, since *Rider*, the Legislature has abolished contributory negligence in favor of the doctrine of comparative fault, *see N.J.S.A.* 2A:15–5.1 to –5.3 (the Act), requiring the fact-finder to determine "the extent, in the form of a percentage, of each party's negligence or fault," in all negligence cases, including "professional malpractice." *N.J.S.A.* 2A:15–5.2. An action by an insured against his insurance broker for negligently failing to provide adequate coverage is a negligence action. Therefore, in such an action, if an insured fails to examine his or her policy, that failure may constitute negligence which a jury should consider in allocating fault between the broker and the insured. In addition, any other conduct by an insured that a reasonable jury could conclude was unreasonable under the circumstances, should be considered on the element of the insured's comparative negligence.

Accordingly, we conclude the judge erred in not instructing the jury on plaintiffs' comparative fault so that it could properly consider and allocate the percentages of fault between the parties. Instead of giving a comparative negligence charge, the judge instructed the jury it had to find that plaintiffs were the *sole proximate cause* of their loss before it could find in favor of defendant. We are convinced that the jury could have been confused and misled by this one-sided instruction. The instruction was tantamount to requiring the jury to find plaintiffs 100% negligent before it could exonerate defendant, whereas a finding of 51% fault on the part of plaintiffs would have produced a verdict in favor of defendant. Because the instruction had the clear capacity to confuse and mislead the jury, we conclude it was clearly capable of producing an unjust result. *R.* 2:10–2. *See Conklin v. Hannoch Weisman*, 145 *N.J.* 395, 410, 678 *A.*2d 1060 (1996); *see also Vallejo v. Rahway Police Dept.*, 292 *N.J.Super.* 333, 342, 678 *A.*2d

1135 (App.Div.), *certif. denied,* 147 *N.J.* 262, 686 *A.*2d 763 (1996). Consequently, we are constrained to reverse the judgment.

At the retrial, in addition to explaining the duties of an insurance broker, the judge should also instruct the jury on the insured's obligation to examine his or her policy. In addition, the judge should explain to the jury that if it believes Fortsh's version of the events, it should consider, in the light of the experts' opinions, whether plaintiffs were in any way at fault for the inadequate insurance coverage.

Reversed and remanded for a new trial.