[No. 28719. *En Banc.* February 27, 1943.]

*In the Matter of the Estate of* MAUD EGLEY, *Deceased.*
ELWANDA BREWSTER, *Appellant,* v. MARTHA HALL *et al., Respondents.*[1]

[1]Reported in 134 P. (2d) 943.

 

*Rummens & Griffin,* for appellant.

*Simmons & McCann,* for respondents.

SIMPSON, C. J.—This case involves the right of an adopted child to inherit from her first adoptive parents after being adopted a second time.

In 1923, when the appellant was nineteen months of age, she was adopted by J. W. Egley and Maud Egley, husband and wife. When she was four and a half years old, appellant was adopted by Wayne H. and Laverna Carstensen. Mr. Egley died intestate in 1936. Mrs. Egley died in 1941, leaving a will by the terms of which she left appellant the sum of one dollar. Appellant claimed that she was entitled to inherit from her adoptive father and mother, J. W. Egley and Maud Egley.

The trial court held that the first order of adoption was void for the reason that the permission to adopt was signed by the mother alone and did not set forth the fact that the parents were living separate and apart. The order of adoption reads:

"IN THE MATTER OF THE ADOPTION OF ELWANDA EGLEY, a minor. No. 32670. ORDER.

"The above entitled matter coming on regularly for hearing before the Court on the petition of J. W. Egley and Maude L. Egley, his wife, asking that they be permitted to adopt as their legal child and heir one Elwanda Egley, a minor; it appearing to the satisfaction of the Court from an examination of the records and files herein that Elwanda Egley is a minor of the age of approximately nineteen months and that she is in need of someone to maintain and support her. That her mother has given consent to her adoption and is unable to properly care for her.

"It further appearing to the Court that J. W. Egley and Maude L. Egley, his wife, are able and willing to care for, maintain and support said minor child; Now Therefore,

"IT IS HEREBY ORDERED that from this date the minor child hereinbefore named, to-wit: Elwanda Egley, be and she is hereby declared to be the adopted child of J. W. Egley and Maude L. Egley, his wife, entitled to all the rights and privileges and subject to all the obligations of a child of petitioners begotten in lawful wedlock.

"DONE IN OPEN COURT this 28th day of February, 1923. OTIS W. BRINKER, JUDGE."

We shall assume, without deciding, that the question of the validity of the judgment of adoption in the first case could be litigated in the present proceeding. The statute in force at the time of the adoption by Mr. and Mrs. Egley stated:

"*Any inhabitant of this State,* not married, or any husband and wife jointly, may petition the superior court of their proper county for leave to adopt and change the name if desired, of any child under the age of twenty-one years, but a written consent must be given to such adoption by the child, if of the age of fourteen years, and by each of his or her living parents who is not hopelessly insane or a confirmed drunkard. If there be no such parents, or if the parents be unknown, or shall have abandoned such child, or if such parents, or either of them, are hopelessly insane, or a confirmed drunkard, then by the legal guardian; if there be no such guardian, then by a discreet and suitable person appointed by said court to act in the proceedings as the next friend of such child: *Provided, however, That if the parents are living separate and apart, the consent of both is not required, but such consent may be given by the parent having the care, custody and control of such child: And provided further,* That either spouse may adopt a child of the other." Chapter 155, Laws of 1905, p. 296. (Italics ours.)

■ Did the order of adoption have to show the marital status of the natural parents of appellant at the time she was first adopted? We are of the opinion that the order was valid on its face. In *In re Dingman,* 110 Wash. 513, 188 Pac. 755, an order of adoption, in so far as it related to the consent required by the statute, stated, "consent having been made to such adoption by the surviving parent." The order in that case was attacked upon the ground that it did not show that the surviving parent was an inhabitant of the state of Washington. The case is so decisive of the question under consideration that we feel justified in quoting from it at length:

"It is first contended in behalf of appellant upon this branch of the case that the order of adoption is void for want of setting forth the fact that the petitioners Gokey and wife, at the time of the entering of the adoption order, were inhabitants of this state. The argument is, in substance, that because of the special nature of the proceeding, it not being one in the course of the common law, the failure to set forth such fact in the order of adoption is such a failure to show a jurisdictional fact as to render the order void on its face, notwithstanding it was made and entered in the superior court, a court of record and general jurisdiction. It is elementary that a failure to recite jurisdictional facts in a judgment rendered by a court of general jurisdiction in an ordinary action at law does not render the judgment void. This because of the jurisdictional presumptions attending the judgments of courts of that dignity. Counsel invoke in behalf of appellant the rule as announced by some of the courts, that when jurisdiction is vested by statute or other written law, in a special proceeding not in the course of the common law, in a court of general jurisdiction, as to such proceeding the court becomes in effect one of special or limited jurisdiction; that jurisdictional facts must affirmatively appear of record in the proceeding, either in the recitals of the judgment or otherwise, and that without such recital of jurisdictional facts the judg-

ment rendered in such proceeding, even by such a court, is void. It may be conceded that there is respectable authority sustaining such view of the law, but we think this court has committed itself to the opposite view."

The opinion goes on and refers to *Taylor v. Huntington,* 34 Wash. 455, 75 Pac. 1104, and Freeman on Judgments, § 123, and then says:

"While the territorial probate court was a court of limited jurisdiction, and acquired its jurisdiction over the matter of the adoption of children solely by virtue of these provisions of the adoption statute found in the probate code, the jurisdiction of the superior court does not now rest alone upon these statutory provisions, for we read in § 6, article 4, of the constitution, that,

" 'The Superior Court shall have original jurisdiction . . . of all matters of probate. . . .'

"It seems to us apparent, in view of the fact that this adoption statute was, at the time of the adoption of our state constitution, a part of the then 'probate practice act,' which was a single act of the territorial legislature, that the makers of the constitution used the words 'all matters of probate' as inclusive of the adoption of children. It may be that the matter of the adoption of children might not ordinarily be considered a matter of probate, but it was so recognized by the law of our territory when the constitution was framed, and we think the conclusion cannot be escaped that the words 'matters of probate' were used in the constitution as inclusive of that subject, as well as the probate of wills and administration of estates of decedents. The superior court being a court of general jurisdiction, created by the constitution of the state conferring upon it this among other subjects of jurisdiction, we think it was, in effect, a rendering of the words 'set forth the facts,' as found in § 1698, in any event as nothing more than directory, even if these words could be regarded as of greater force under the territorial law, when the subject of the adoption of children was one of jurisdiction of a court of limited jurisdiction. We are therefore of the opinion that, at this time, the failure to set forth jurisdictional facts in the order of

adoption here in question does not render such order void. This is not a case of seeking to avoid the order because the adopting parents were not in fact residents of the state at the time of the entering of the order of adoption. Whether or not the order should be set aside upon an affirmative showing, in a proper proceeding, that they were not then residents of the state, is quite another question."

It is clear that the recital of one requirement of the statute in the order is as vital as any other; and, if one requirement may be omitted, the other also may be omitted. The decision to which we have referred compels us to hold that the judgment or order of adoption by Mr. and Mrs. Egley was valid.

Another question for determination is whether the second adoption cuts off the right of an adopted child to inherit from its prior adoptive parents.

Our statute, Rem. Rev. Stat., § 1341 [P. C. § 9847], relating to descent, provides:

"The words 'issue,' 'child' and 'children' wherever used in this section shall be construed to include lawfully adopted children."

Rem. Rev. Stat., § 1699 [P. C. § 9816], relating to the adoption of children, contains the following provision:

"By such order the natural parents shall be divested of all legal rights and obligations in respect to such child, and the child shall be free from all legal obligations of obedience and maintenance in respect to them, and shall be, to all intents and purposes, the child and legal heir of his or her adopter or adopters, entitled to all rights and privileges and subject to all the obligations of a child of the adopter or adopters begotten in lawful wedlock; . . ."

The last mentioned statute has been construed by this court in the following cases: *Van Brocklin v. Wood,* 38 Wash. 384, 80 Pac. 530; *In re Masterson's Estate,* 45 Wash. 48, 87 Pac. 1047, 122 Am. St. 886; *In re Masterson's Estate,* 108 Wash. 307, 183 Pac. 93; *In re*

*McCorkle's Estate,* 128 Wash. 556, 223 Pac. 1038; *In re Waddell's Estate,* 131 Wash. 566, 230 Pac. 822; *In re Hebb's Estate,* 134 Wash. 424, 235 Pac. 974; *In re Roderick's Estate,* 158 Wash. 377, 291 Pac. 325, 80 A. L. R. 1398.

In speaking of the statute, Judge Main stated in *In re Hebb's Estate, supra:*

"This statute has, on a number of occasions, been before this court, and the effect of the cases has been to give it a construction which places an adopted child in exactly the same position as a natural child so far as that is possible. In other words, to make the status the same as to all rights, privileges and obligations.

"One of the rights and privileges of a natural child is to inherit property as a descendant of its parents. If the adopted child does not have the same right, then it is denied a right or privilege which the natural child has, and the holding in the *Van Brocklin* case, *supra* [38 Wash. 384, 80 Pac. 530], was that the adopted child was entitled to all the rights and privileges of a child begotten in lawful wedlock."

We have held in *In re Roderick's Estate, supra,* that a child retains his right to inherit from his natural parents after he has been adopted.

The statute says, and this court has held, that an adopted child has exactly the same rights as a child born in lawful wedlock. Therefore, the rights to inherit are equal—definitely made so by statute. That being true, it must be held that those definite rights to inherit cannot be set aside by a subsequent adoption. The rights of an adopted child are fixed at the time of the adoption and can no more be taken away than the rights of a child born in lawful wedlock. This conclusion finds support in the following cases: *Patterson v. Browning,* 146 Ind. 160, 44 N. E. 993; *Dreyer v. Schrick,* 105 Kan. 495, 185 Pac. 30; *Holmes v. Curl,* 189 Iowa 246, 178 N. W. 406; *In re Sutton's Estate,* 161

Minn. 426, 201 N. W. 925; *Villier v. Watson's Adm'x,* 168 Ky. 631, 182 S. W. 869, L. R. A. 1918A, 820.

In *Dreyer v. Schrick, supra,* the facts relative to successive adoptions were almost identical with those in the instant case. The state of Kansas had a statute relating to adoption which read as follows:

"Minor children adopted as aforesaid shall assume the surname of the person by whom they are adopted, and shall be entitled to the same rights of person and property as children or heirs-at-law of the person thus adopting them." (Gen. Stat. 1915, §§ 6362, 6363.)

In speaking of the right to inherit from the first adoptive parents, the supreme court of Kansas stated:

"The first proceeding stands for all time, in all its integrity; attended by the same legal consequences as birth of a child to the adopting parents, unless formally annulled on sufficient grounds, in a proper proceeding to that end. The law creates capacity to inherit, and not birth or adoption. The law invests those born and those adopted with that capacity without distinction."

The supreme court of Iowa, in *Holmes v. Curl, supra,* followed and adopted the reasoning in the case just cited.

In *In re Sutton's Estate, supra,* the supreme court of Minnesota stated:

"The second adoption did not annul the status of respondent as heir of her first adoptive father, Harry E. Sutton. We held in *Roberts v. Roberts,* 160 Minn. 140, 199 N. W. 581, that an adoption did not take away the right of the child to inherit from its natural parents. There is no more reason why a second adoption should take away the right of inheritance conferred by the first adoption. *Patterson v. Browning,* 146 Ind. 160, 44 N. E. 993, is a parallel case on this point. The court there said: 'We see no reason why an adopted child may not inherit from its natural parents . . . and if this is so, and we think it is, there is equally no reason why such adopted child might not inherit from

both the first and second adopted parents. At all events, there is no reason why the second adoption should destroy the relation created by the first adoption and the legal capacity to inherit thereby created.' "

The following excerpt from *Villier v. Watson's Adm'x, supra,* contains an excellent reason for holding that a child never loses its right to inherit from an adoptive parent because of a subsequent adoption:

"All the authorities agree, that the fact of adoption does not lose the adopted child's right of inheritance from his parents. With this right existing, it would be difficult to see why a child could not inherit from two or more persons, who might, by adoption, bestow that right upon him. If such rule, as is contended for by appellants, should prevail, and a child was held in adoption, the adoptive father, or other designing person, could take away the child's right of inheritance from the adoptive father, by procuring some penniless person to adopt the child as his heir, which he might do without the child's or any one else's consent and the parental control could be acquired by the consent of the adoptive parent."

The first opinion adhering to a contrary view was *In re Klapp's Estate,* 197 Mich. 615, 164 N. W. 381, L. R. A. 1918A, 818. The reasoning of that case was adopted in *In re Talley's Estate,* 188 Okla. 338, 109 P. (2d) 495, 132 A. L. R. 773. In the Michigan case, one judge dissenting, the court based its opinion on the ground that the original order of adoption was revoked by the second adoption; that the first adoptive father was no longer entitled to the custody or services of the child; that, in the case of the natural father, the question whether the child shall become his heir is not subject to his assent or contract, and therefore the child's right to inherit from him is not subject to his election and that the law irrevocably fixes his status in that respect the moment he is born.

The reasoning of the first proposition in the Michigan case has no significance, because in the instant case the original order of adoption was not revoked.

The second ground adopted by the Michigan case cannot and does not affect the right of an individual to inherit under the laws of this state. Our statute gives the right to inherit by saying that the adopted child is ". . . entitled to all the rights and privileges and subject to all the obligations of a child of the adopter or adopters begotten in lawful wedlock."

The last reason given by the Michigan court is not consistent, for the reason that the child in neither instance has an election. The child has no election as to his birth. Neither has he an election, if he be of tender years, as to whether or not he shall be adopted. In each instance the parents—natural parents and adoptive parents—voluntarily assumed the parental obligation imposed by law.

The judgment is reversed, with instructions to proceed in accordance with the views expressed in this opinion.

MILLARD, STEINERT, ROBINSON, and GRADY, JJ., concur.

BLAKE, J. (dissenting)—The rule accepted by the majority in this case is the outgrowth of what seems to me to be an erroneous conception and application of the doctrine that an adopted child may inherit from its natural parents as well as from its adoptive parents. The question as to whether a child adopted for a second time, may inherit from its first adoptive parents was first considered by a court of last resort in *Patterson v. Browning*, 146 Ind. 160, 44 N. E. 993. The court sustained the right to inherit, saying:

"We see no reason why an adopted child may not inherit from its natural parents, and also from its

adoptive parents. And if that is so, and we think it is, there is equally no reason why such adopted child might not inherit from both the first and second adoptive parents."

In that case, however, the first adoptive parent had died before the child's second adoption. It was, under the facts, wholly unnecessary to extend the rule with respect to an adopted child's right to inherit from its natural parents, for the child's right to inherit from the prior adoptive parent became fixed upon the latter's death. Nevertheless, the Indiana case has been regarded as authority for the subsequent decisions in which it is held that a second adoption does not bar a child's right to inherit from prior adoptive parents, even though the second adoption is consummated during the lifetime and with the consent of the latter.

This application of the rule has been challenged by the supreme court of Michigan in *In re Klapp's Estate,* 197 Mich. 615, 164 N. W. 381, L. R. A. 1918A, 818, and by the supreme court of Oklahoma in *In re Talley's Estate,* 188 Okla. 338, 109 P. (2d) 495, 132 A. L. R. 773. These courts say, in substance, that there is a fundamental distinction between the relationship of a child to its natural parents and its relationship to adoptive parents; that, while, upon adoption, the natural parents lose the right to the custody and the services of the child and shift the burden of the child's care and protection to the adoptive parents, it does not, in fact, cease to be their child; that, in contemplation of statutes of descent, the child's right to inherit is fixed at birth and this right cannot be destroyed by adoption unless expressly provided by statute. These courts say, on the other hand, that the relationship between a child and its adoptive parents is created and maintained solely by statute; that the rights of the adoptive parents over the child, and its obligations to them, are completely abro-

gated by a second adoption; and that, after a second adoption, there is left no natural or legal tie between the child and its first foster parents to justify preserving (as a sole incident of the adoption) the right to inherit.

While at present this view of the supreme courts of Michigan and Oklahoma may be said to be against the weight of authority, I think it is sound, and that, if followed, it would obviate what may become a very perplexing problem: If a child twice adopted should die intestate and leave an estate of substance, whose child would it be in contemplation of the laws of descent? To say that the child's natural parents or its first adoptive parents are its heirs would put a high premium upon the casting off of natural and legally assumed obligations of parenthood while penalizing the second adoptive parents who have faithfully discharged their responsibility of rearing and caring for the child.

I think that there is no legal or moral justification for holding that a child is entitled to inherit from adoptive parents when, during their lifetime and with their consent, it has again been adopted by others. I therefore dissent.

BEALS, JEFFERS, and MALLERY, JJ., concur with BLAKE, J.