In the Matter of the Accounting of PRESIDENT & DIRECTORS OF THE MANHATTAN COMPANY, as Successor Trustee under the Will of SARAH MYRES, Deceased.

Surrogate's Court, New York County, January 29, 1954.

*Charles Looker, Louis A. Jaffe* and *Paul Tenen* for successor trustee, petitioner.

*Elsie M. Quinlan* for Monroe Paradice, respondent.

COLLINS, S. In this proceeding to settle the final account of the trustee, the court is asked to construe paragraph Sixth of the will wherein testatrix gave her residuary estate to her executors in trust, to pay the income thereof " to my son Jacob during the term of his life, and upon his death, I direct my executors hereinafter named, the successors or successor of them to pay over absolutely and forever, the principal so held in trust, to my children, in equal shares and portion, the children of any deceased child of mine, to take the share which the parent would have taken, if living."

Testatrix was survived by five children: Jacob Myres, the life beneficiary, Harry H., Magnus J., Monroe R. Myres and Eva M. Heller. Jacob has now died intestate, terminating the trust. Harry H. Myres still survives. The other three children predeceased the life beneficiary. Magnus J. Myres died testate, survived by his widow and a son, James E. Eva M. Heller died intestate, survived by a son Ascher M. Heller. Monroe R. Myres died intestate, survived by his widow, a daughter, Muriel Cazalet, and an alleged adopted son, Monroe Paradice.

Two questions arise: (1) Is the remainder vested or contingent? (2) Does the alleged adopted child share in the remainder?

With respect to the first question the court holds that under the clear language of the will the remainder is contingent as a gift to a class to be determined upon the death of the life tenant (*Matter of Bierhoff*, 271 App. Div. 743, affd. 297 N. Y. 694; *United States Trust Co.* v. *Peters*, 180 App. Div. 186, affd. 224 N. Y. 626; *Matter of Gurlitz*, 134 Misc. 160; *Matter of Burdsall*, 128 Misc. 582, affd. 221 App. Div. 756; *Matter of Einstein*, 113 Misc. 105). It is apparent that testatrix so intended, especially since it is obvious that the words " if living " had reference to the time of Jacob's death rather than that of testatrix herself. The remainder therefore passes in five equal shares to the surviving child and to the children of the four deceased children.

The second question concerns the right of the alleged adopted child of Monroe R. Myres, namely Monroe Paradice, hereinafter called the respondent, to share equally with Muriel Cazalet, the former's natural child, in the portion of the remainder to which said Monroe R. Myres would have been entitled, if living. The undisputed facts are as follows: Monroe Paradice was adopted by Monroe R. Myres and his wife in 1909. In 1915, by decree of the Circuit Court of Cook County, he was removed from the custody of his foster parents to the Illinois Childrens Home and

Aid Society. In the same year he was adopted by Nicholas and Minnie Paradice and has been known by that name ever since. Thereafter Monroe R. Myres and his wife were divorced and he remarried. In 1917, their child Muriel was born. Testatrix drew her will in 1920, and died in 1921.

Our primary consideration is the legal effect of the second adoption. If it nullified the first, then clearly respondent was no longer the child of Monroe Myres, even insofar as direct inheritance is concerned. If it did not, we must then consider respondent's right to inherit any share of the remainder herein, first in the light of section 115 of the Domestic Relations Law, and secondly with regard to the intention of testatrix as discussed in the controlling authorities.

Although the will itself must be interpreted under our law, the preliminary question respecting the successive adoptions should be resolved under the law of Illinois where they took place. Where, however, the law of Illinois on the subject does not appear by the record, it is the duty of the court " to determine the case according to the law of New York as established, or in the absence of controlling authority, as justice having regard to all interests may seem to the court to require." (*Bath Gas Light Co.* v. *Claffy,* 151 N. Y. 24, 37.)

In most jurisdictions, including New York and Illinois, an adopted child may inherit from the natural as well as the adoptive parents. In *Matter of Tilliski* (390 Ill. 273, affg. 323 Ill. App. 490), the question was raised as to whether, because of apparently conflicting statutes, an adopted child inherited from both adoptive and natural parents, but the court decided in favor of such dual inheritance. While there appears to be no decisions either here or in Illinois as to similar rights in the case of two successive adoptions, there are conflicting rulings on the point in other jurisdictions. In *Patterson* v. *Browning* (146 Ind. 160); *Russell* v. *Russell* (14 Ky. L. Rep. 236); *Villier* v. *Watson* (Ky. 631); *Holmes* v. *Curl* (189 Iowa 246); *Dreyer* v. *Schrick* (105 Kan. 495); *Matter of Sutton* (161 Minn. 426); *Matter of Egley* (134 P. [2d] 943 [Wash.]) and *Coonradt* v. *Sailors* (186 Tenn. 294), it was held that a child of successive adoptive parents could inherit from both. In some of these cases the second adoption took place after the death of the first adoptive parents but the weight of authority seems to be that a readoption even during the prior foster parent's life preserves the right of inheritance from both (Notes, 132 A. L. R. 778, Annot.; 145 A. L. R. 827).

*Matter of Talley* (109 P. [2d] 495 [Okla.]) and *Matter of Klapp* (197 Mich. 615) hold that a child twice adopted cannot inherit from both sets of adoptive parents while the first are still living. *Matter of Talley (supra)*, recognized the rule that on the death of the first parents, the rights of the adopted child vested but would not extend it to a case where the first adoptive parents still live. The Michigan case (*Matter of Klapp*, 197 Mich. 615, *supra*) was decided in 1917. In 1950, *Matter of Carpenter* (327 Mich. 195), a case where the facts were very similar to those in the instant matter, namely, where a child was removed from the custody of adoptive parents, placed in an institution, and then later readopted by other parents, the court followed *Matter of Klapp (supra)*, but mainly on the ground that it established a rule of property that had been in existence for thirty years, went on to state that the court was impressed by the views of the Circuit Judge who had decided in accord with the decisions of the majority of the States as above enumerated and indicated that a legislative amendment might be in order.

The court herein holds with the weight of authority that the second adoption of Monroe Paradice did not nullify the first so as to defeat his right of inheritance from his first adoptive parents. In view, however, of the holding herein that the remainder is contingent and did not vest in the estate of Monroe R. Myres but passes to his " child " under the limitation in paragraph Sixth of the will we must now consider the effect of section 115 of the Domestic Relations Law, and the intention of testatrix when she made her will. Section 115 of the Domestic Relations Law provides: " The foster parents or parent and the foster child shall sustain toward each other the legal relation of parent and child and shall have all the rights and be subject to all the duties of that relation including the rights of inheritance from each other. As respects the passing and limitation over of real or personal property dependent under the provisions of any instrument on the foster parent dying without heirs, the foster child is not deemed the child of the foster parent so as to defeat the rights of remaindermen."

Respondent contends that the above provisions do not apply: (1) because there was no gift over in the event any child of testatrix died without leaving children, and (2) assuming there was, the natural daughter alone would have defeated the interests of the remaindermen. Petitioner maintains that the alleged adopted child alone could have defeated the rights of the other remaindermen which is violative of the exception in the statute,

whereas the defeat of their rights by the natural child would not be prohibited.

The recent decisions in *Matter of Charles* (200 Misc. 452, affd. 279 App. Div. 741, affd. 304 N. Y. 776) and *Matter of Upjohn* (304 N. Y. 366) stress the present liberal attitude toward the rights of adopted children, pointing out that the above statute guarantees their costanding with natural children except as to the rights of remaindermen. Both rulings held on their facts that there was no violation of the exception in said statute and also evinced a liberal attitude in this respect. *Matter of Charles* (*supra*) involved the right of the donee of a power to appoint to her own adopted children. Surrogate FRANKENTHALER held that the statute was not contravened. However, there was not involved a remainder dependent on the foster parent dying without heirs. In *Matter of Upjohn* (*supra*, p. 372), on the other hand, there was such a remainder, the will providing that if any named beneficiary was to die before termination of the trust the income payable to him or her was to be paid " during the \* \* \* trust, ' to his or her lawful issue or descendants, if any ' " and in default of any surviving, to the other designated beneficiaries. One of the deceased beneficiaries left an adopted child, and upon the former's death the Surrogate of Suffolk County and the Appellate Division, Second Department, held that the adopted child was not the issue or descendant of the beneficiaries under the provisions of the will. The Court of Appeals reversed the lower courts and held in favor of the adopted child, holding that the exception in section 115 of the Domestic Relations Law was designed to safeguard the intention of a testator, not to defeat it. Inextricably bound up with its ruling respecting the statute is the court's holding with respect to the intention of testatrix and although referring with approval to the decisions in *New York Life Ins. & Trust Co. v. Viele* (161 N. Y. 11) and *Matter of Leask* (197 N. Y. 193), to the effect that the testator in limiting remainders to issue will be deemed to have intended relatives of the blood unless the will states to the contrary, the court indicated that where a child has been adopted prior to the making of the will and was known to decedent the rule is that such child will take unless there is an indication express or implied in the will of an intention to exclude such child. The court stated (*Matter of Upjohn*) at page 375: " Where it appears that he knew of the adoption, he is taken, therefore, to have intended inclusion of the adopted child, and his will is so construed, unless other language in the

will or other circumstances reflect a different or contrary intention'' — and again at page 376: '' Had he desired that she be excluded, he could and would have indicated that intention plainly and expressly.''

In the instant case we must assume that testatrix knew of the adoption of respondent by her son and of the subsequent readoption. We have seen that as a matter of law he still remained the child of her son. Furthermore, there is no element present of an adoption at a period subsequent to the making of the will which would act as a fraud on the rights of remaindermen. If the second adoption had any effect on testatrix' attitude toward the child she could easily have stated as suggested in *Matter of Upjohn (supra)*, that she did not wish him to share in her estate.

In accordance with the ruling in *Matter of Upjohn* (304 N. Y. 366, *supra*), the court holds that the adopted child, Monroe Paradice, is entitled to share in the estate under paragraph Sixth of the will.

The court therefore holds that the remainder herein is distributable in five equal shares: one fifth to Harry H. Myres, the only child of testatrix who still survives; one fifth to James E. Myres, son of her deceased son Magnus J. Myres; one fifth to Ascher Heller, son of her deceased daughter Eva M. Heller; one fifth to Rudolph Myres, son of her deceased son Jacob Myres; and one tenth each to Muriel Cazalet, daughter, and Monroe Paradice, adopted son, of her deceased son Monroe R. Myres.

Submit decree on notice construing the will and settling account accordingly.