(No. 33678.—

In the Matter of the Estate of Barbara K. Leichtenberg.—(Victor Mueller, Appellant, *vs.* James J. Remich *et al.,* Appellees.)

*Opinion filed January 19, 1956.*

DAVIS, J., dissenting.

LEVINSON, BECKER & PEEBLES, of Chicago, (DON M. PEEBLES, WILLIAM J. LUNN, and HALBERT O. CREWS, of counsel,) for appellant.

GEORGE A. ROONEY, MAXFIELD WEISBROD, and ROSS S. WELCH, all of Chicago, for appellees.

Mr. JUSTICE DAILY delivered the opinion of the court:

Victor Mueller, the son of Anna and Jacob Mueller, was born a resident of the State of Wisconsin and resided therein with his natural parents until he was ten years of age, at which time, in 1918, he was taken to Chicago, Illinois, and immediately adopted by his aunt and uncle, Barbara and John Leichtenberg, who were residents of that city. The child became homesick in his new environment and after living with his adoptive parents for only two weeks, was returned to his natural parents in Wisconsin, who, thereafter in 1920, filed a petition in the county court of Washington County, Wisconsin, to readopt this child. The Leichtenbergs having consented to such action, a decree was subsequently entered which provided, among other things, "that said child shall be fully restored to its natural parents as fully as though no prior adoption had been made." Although Victor continued to live with his natural parents until the date of his marriage, he at no time either visited or corresponded with the Leichtenbergs.

John Leichtenberg died testate in 1936 and at the proceedings which followed in the probate court of Cook County, it was found, without objection, that he left no natural or adopted children surviving. Upon the death of Barbara Leichtenberg in 1952, a similar finding was entered by the same court. This time, however, objections thereto were filed by Mueller and appeal taken by him to the cir-

cuit court of Cook County, which held that the readoption of Mueller did not alter his right to inherit from his first adoptive parents. Upon appeal by certain blood relatives of the decedent, the Appellate Court for the First District reversed and remanded on this proposition of law. Appeal has now been taken to this court.

In seeking a reversal of the Appellate Court decision, Mueller now contends (1) that a Wisconsin statute prevented the adoption of a child by his natural parents, that the readoption decree was therefore void upon its face, and for that reason it could have had no effect upon the relationship created by the prior Illinois decree, and (2) that in any event, a child may inherit from successive sets of adoptive parents.

It must be noted that the first proposition was never raised in either the probate or circuit court but was presented for the first time by Mueller in his briefs to the Appellate Court. The latter tribunal recognized this fact and was of the opinion that by so acting, the parties had waived all rights to an adjudication of this question. A careful consideration of the problem leads us to agree with this result. Mueller, having filed objections in the probate proceedings, became the appellant in the circuit court and in the trial *de novo* therein was free to offer any theory or evidence which would support his claim of heirship. Nevertheless, the circuit court decree clearly shows that the only question presented was whether Mueller could inherit from the decedent even though readopted by his natural parents. The record also discloses that even though the Wisconsin judgment was put in evidence in these proceedings, no objection was made as to its validity. We have frequently held that the theory upon which a case is tried in a lower court cannot be changed on review. (*Blanchard* v. *Lewis,* 414 Ill. 515; *Chicago Title and Trust Co.* v. *DeLasaux,* 336 Ill. 522; 3 Am. Jur. sec. 830.) To do so would not only greatly prejudice the opposing party

but would also weaken our system of appellate jurisdiction. In so holding, however, we are not unmindful of the principles laid down by this court in *Becker* v. *Billings,* 304 Ill. 190, and other cases which followed. On these and other occasions we have said that although an appellant's scope of review is limited by his assignment of errors, an appellee may sustain the lower court decree by any argument based upon issues appearing in the record. Therefore, when the questions of statutory limitations, (*Becker* v. *Billings,* 304 Ill. 190); unconstitutionality, (*People ex rel. Jendrick* v. *Allman,* 396 Ill. 35); plaintiff's negligence, (*Hazel* v. *Hoopeston-Danville Motor Bus Co.* 310 Ill. 38); and scope of the Workmen's Compensation Act, (*Mueller* v. *Elm Park Hotel Co.* 391 Ill. 391), were raised in the trial court, the appellee was free, upon review, to support the prior decision by any argument which was commensurate with the issues presented therein. In the present case, however, no issue as to the validity of the Wisconsin decree was presented in the lower courts. For that reason, this contention will not now be considered upon review. Thus, the only question before us at the present time is whether a child, having been readopted prior to the death of his first adopting parents, may share, as such, in their estate.

Since this is a case of first impression in this State, it may be helpful to consider similar cases arising in other jurisdictions. The first cases that considered this general subject were *Russell's Admr.* v. *Russell's Guardian,* 14 Ky. Law Reporter 236, and *Patterson* v. *Browning,* 146 Ind. 160, 44 N.E. 993, both of which held that a child could inherit from his first adopting parents even though he was readopted *after* their death. In *Villier* v. *Watson,* 168 Ky. 631, 182 S.W. 869, the Kentucky court, although faced with a different factual situation, relied solely on the *Russell case* in holding that a child, readopted *prior* to their death, could nevertheless inherit from his first adopting parents. A similar extension of the Patterson holding was accom-

plished by the Kansas court in *Dreyer* v. *Schrick,* 105 Kan. 495, 185 Pac. 30. Thereafter, as the problem arose in other jurisdictions, no distinction was made between the above-cited cases. Iowa relied upon the *Patterson, Dryer,* and *Villier* cases in holding that a child could inherit from the first adoptive parents regardless of when he was readopted. (*Holmes* v. *Curl,* 189 Iowa 246, 178 N.W. 406.) Washington relied upon the *Patterson, Dreyer, Villier,* and *Holmes* decisions to reach a similar result. (*In re Egley's Estate,* 16 Wash. 2d 681, 134 P. 2d 943.) The same snow-balling of citations accounted for *Hawkins* v. *Hawkins,* 218 Ark. 423, 236 S.W. 2d 733, and *In re Myres's Estate,* 129 N.Y.S. 2d 531. Only Michigan and Oklahoma refused to follow this majority view. In the cases of *In re Klapp's Estate,* 197 Mich. 615, 164 N.W. 381, *In re Carpenter's Estate,* 327 Mich. 195, 41 N.W. 2d 349, and *In re Talley's Estate,* 188 Okla. 338, 109 P. 2d 495, these States have held that a second adoption prior to the death of the first adopting parents, destroys any and all relationships created by the first decree, including the right to inherit. Those who favor the majority view argue that since the adopting parents are said to stand in the same relationship to the child as did his natural parents, and since an adopted child may inherit from his natural parents, he should also be able to inherit from successive sets of adopting parents. The minority proponents, on the other hand, deny the logic in this syllogism.

We are inclined to agree with the latter. Adopting parents do not, in every respect, stand in the same relationship to the child as do his natural parents. Even though a child may be the subject of several adoption decrees, he forever remains the son of his natural parents. As we said in *Dwyer* v. *Dwyer,* 366 Ill. 630: "An adoption of a child does not work a complete severance in the relationship between the child and its natural parents. The duty of a parent to support his minor child arises out of the

natural relationship, and while that duty may also be imposed upon the adoptive parents by statutory enactment, the natural parent may, if necessity arises, be required to perform that duty." Historically, there has always been and still remains a clear distinction between these two relationships. Until very recently in this State, an adopted child could not inherit from lineal or collateral kindred of his adopting parents nor were they, with certain exceptions, considered as his heirs for purposes of inheritance, and even now, this right is limited. (Ill. Rev. Stat. 1955, chap. 3, par. 165.) Furthermore, even though one may be an adopted child of his adoptive parents and a natural child of his natural parents, it is difficult to see how he could be an adopted child of successive sets of adoptive parents at the same time.

The right to inherit is clearly statutory (*Jahnke* v. *Selle,* 368 Ill. 268; *Weyer* v. *Barwell,* 327 Ill. 214,) and may be given or taken away at the discretion of the legislature. (*McLaughlin* v. *People,* 403 Ill. 493.) As applied to children, this right of succession is controlled exclusively by sections 11, 12, 13 and 14 of our Probate Act. (Ill. Rev. Stat. 1955, chap. 3, pars. 162-165.) Under these sections, respectively, a child takes as a descendant of his natural parents, the illegitimate as a descendant of his mother or maternal ancestors, the posthumous as a descendant of his natural parents, and the adopted child as descendant of his adopting parents. (*In re Estate of Tilliski,* 390 Ill. 273.) Under these provisions, a child may inherit from his natural parents and also from his adoptive parents. If, upon the death of his adoptive parents and after his rights of inheritance therein have vested, a child is re-adopted, he then becomes the adopted child of the second adoptive parents with all rights that attach thereto. We therefore agree with the decisions reached in *Patterson* v. *Browning,* 146 Ind. 160, 44 N.E. 993, and *Russell's Admr.* v. *Russell's Guardian,* 14 Ky. Law Reporter 236. Our stat-

ute, however, makes no provision for inheriting from *former* adopting parents. It is a fundamental principal of statutory construction that the enumeration of certain things in a statute implies the exclusion of all others. (*People ex rel. Hansen* v. *Collins*, 351 Ill. 551; *Tennant* v. *Epstein*, 356 Ill. 26.) We must assume, therefore, that no such right was intended by our Legislature.

For us to hold otherwise would be to add confusion to a tranquil field of law. This problem is, clearly, not a one-way street. If a child is allowed to inherit from successive sets of adopting parents, no reason exists why he should not also take from the lineal and collateral kindred of both present and former adopting parents, or why all sets of such adopting parents should not inherit from his estate. Yet, one can but imagine the injustices that would result. Not only would this allow one set of adopting parents to benefit from the generosity of another, but as a practical matter, would make the tracing of heirship exceedingly difficult, and in many cases, necessitate the drafting of a will to avoid the possibility of an unknown adopted heir sharing in the estate. Such, of course, is not desirable. It is our opinion that a child, having been readopted prior to the death of his first adopting parents, may not share, as such, in their estate. Although in accord with the so-called minority rule, this view is based upon sound legal principles and is in complete agreement with our decision in *In re Estate of Tilliski*, 390 Ill. 273, which held that, under the laws of our State, an adopted child could inherit from his natural parents.

For these reasons, we hold that the Appellate Court for the First District did not err in deciding that Victor Mueller was not the sole heir of the estate of Barbara Leichtenberg, deceased. The judgment of that court reversing and remanding the cause is, therefore, affirmed.

*Judgment affirmed.*

Mr. JUSTICE DAVIS, dissenting:

I feel constrained to dissent from the views expressed by the majority of the court. In doing so, I do not consider certain issues raised by the parties which are not determinative of this case. First, I disregard the subjective reasons for the first adoption of the child, Victor, by the Leichtenbergs, and the short period of time that Victor lived with his adopting parents. In 1918, Victor was adopted by the decedent and her husband by valid decree of the County Court of Cook County. That court had jurisdiction of the subject matter and of the parties. Its decree cannot be attacked collaterally. It established the status of Victor as an adopted child of the Leichtenbergs, and neither innuendo concerning the purposes of the resulting relationship, nor subsequent Wisconsin adoption decree can alter that status or its attendant legal consequences. Second, I set aside the question of whether the Wisconsin decree of adoption in 1920 can be collaterally attacked here.

I believe that the record before us presents a clear legal question: When an adopted child is again adopted by others, prior to the death of his first adoptive parents, does he retain the right to inherit from his first adoptive parents? I believe this question ought to be answered in the affirmative.

The reciprocal rights, duties, privileges, responsibilities, and liabilities created by the adoption statute are, in fact, those of parent and child. The right to inherit from either natural or adopting parents is likewise statutory and is not founded upon natural right nor is it protected by constitutional safeguards. (Ill. Rev. Stat. 1953, chap. 3, pars. 162-165; 9 Ann. Cas. 726; Case Note 9 L.R.A. (n.s.) 121.) So also the right of adoption and its attendant legal consequences are matters of legislative grace and control. (Ill. Rev. Stat. 1953, chap. 4, pars. 1-1 to 9-2.) As stated by one noted commentator, "Adoption being a matter of statute and not of common law, its effect upon the laws

of succession is primarily a matter of the interpretation of the particular statute." Simes, Cases on Trusts and Succession, 1942, p. 71.

It is the clear legislative policy of our State that adopted children have the right to inherit from adopting parents. (Ill. Rev. Stat. 1955, chap. 3, par. 165.) That right stands on the same legal footing as the legislative grant of the right of inheritance to natural children. In neither case does the child take by reason of blood or "birthright," but only as a matter of legislative policy. This policy has constantly been toward the elimination of distinctions between natural and adopted children. (Ill. Rev. Stat. 1955, chap. 3, pars. 162-165, and chap. 4, pars. 1-1 to 9-2.) I cannot believe that the public policy of this State should permit the recognition of two classes of children, one inferior in legal status to the other. Rather, I believe that such policy should give to the adopted child all of the rights and privileges that such child was deprived of by a fortuitous circumstance.

We were forced to interpret the legislative policy and fill the interstices of the statutory scheme in the case of *In re Estate of Tilliski*, 390 Ill. *273*. We there held that a decree of adoption does not destroy the right of the adopted child to inherit from his natural parents. We there said that, "The same right of heirship from blood parents enjoyed by a natural child should not be taken from an adopted child unless clearly required by statute."

At the time of Victor's first adoption the legislature had provided: "A child so adopted shall be deemed for the purposes of inheritance by such child * * * the child of the parents by adoption, the same as if he had been born to them in lawful wedlock * * *." (Ill. Rev. Stat. 1917, chap. 4, par. 5.) The Adoption Act further provided that from the date of the adoption decree, the adopted child "shall, to all legal intents and purposes be the child of petitioner." Ill. Rev. Stat. 1917, chap. 4, par. 3.

This language leaves little room for interpretation. I believe the legislature has attempted, by apt language, to remove all distinctions between the status and rights of natural parents and their children, and of adopting parents and adopted children. By the Cook County decree in 1918, Victor was given the status of a natural child of the Leichtenbergs, "the same as if he had been born to them in lawful wedlock." He was "to all legal intents and purposes" their child.

The right of inheritance of both the natural and the adopted child is destructible and is nothing more than a mere expectancy until the death of a parent. The right of the adopted child could be defeated by the same methods available to defeat the expectancy of a natural child—disinheritance by will, *inter vivos* gifts, etc. But there is nothing in our statutes or in logic to suggest that his status is more precarious than that of a natural child.

The statutes of this State, not birth or adoption, create the capacity and right to inherit. The legislature has invested those born and those adopted with that capacity and right without distinction. I know of no law that can be found in this State which purports to destroy the capacity in one case and not the other. (Cf. *Dreyer* v. *Schrick,* 105 Kan. 495, 185 Pac. 30; 3 Univ. Fla. L. Rev. 237.) I believe that the right to inherit from an adopting parent is as clearly granted as the right to inherit from a natural parent, and that a subsequent adoption should destroy neither right unless clearly required by statute. *In re Estate of Tilliski,* 390 Ill. 273.

The majority also contends that this view would create confusion in the law pertaining to inheritance, and expresses grave fear that all sets of adopting parents would inherit from an adopted child, thereby permitting an unworthy set of adopting parents to benefit from the generosity of others. Our statute relating to inheritance from adopted children, (Ill. Rev. Stat. 1955, chap. 3, par. 165,) without confusion

or complexity, provides that a natural parent shall inherit from a lawfully adopted child only "the property that the child has taken from or through the natural parent or the lineal or collateral kindred of the natural parent by gift, by will, or under intestate laws." If called upon in a proper action to determine such rights, as between the adopting parents, I suggest that this court could so do without the disorder anticipated.

The conclusion which I have reached finds support in the majority of States which have considered this specific question. (*Holmes* v. *Curl*, 189 Iowa 246, 178 N.W. 406; *Dreyer* v. *Schrick*, 105 Kan. 495, 185 Pac. 30; *Hawkins* v. *Hawkins*, 218 Ark. 423, 236 S.W. 2d 733; *In re Estate of Egley*, 16 Wash. 2d 681, 134 Pac. 2d 943; *Villier* v. *Watson*, 168 Ky. 631, 182 S.W. 869; *In re Myres's Estate*, 129 N.Y.S. 2d 531; *Patterson* v. *Browning*, 146 Ind. 160, 44 N.E. 993; *In re Sutton's Estate*, 161 Minn. 426, 201 N.W. 925; *Coonradt* v. *Sailors*, 186 Tenn. 294, 209 S.W. 2d 859.) However, I am less concerned by the fact that this court is adopting a minority rule than I am by the fear that this decision engrafts limitations and disabilities onto the status of an adopted child that find no justification in logic or the language of the applicable statutes. I believe that the majority decision circumvents a consistent legislative policy—to eliminate all distinctions between a natural and an adopted child. For these reasons I feel forced to voice my dissent.