Corinne STARK, Guardian of the Person, and Everett Agee, Guardian of the Estate of Harry Thomas (Tommy) Davis, a Minor, Petitioners,

v.

Katherine WATSON, Successor Guardian of the Person and Estate of Sherron Kathryn Davis Watson, a Minor, and Clark Well Servicing Company, Argonaut Insurance Company and the State Industrial Court, Respondents.

No. 38706.

Supreme Court of Oklahoma.

Jan. 31, 1961.

Schwoerke & Schwoerke, by C. W. Schwoerke, Oklahoma City, for petitioners.

B. H. Carey, Robert N. Woodard, Oklahoma City, Mac Q. Williamson, Atty. Gen., for respondents.

IRWIN, Justice.

This is an appeal from an order of the State Industrial Court awarding death benefits to the Guardians of Harry Thomas Davis and Sherron Kathryn (Davis) Watson, minors, the natural children of Grant Vincent Davis, who died as a result of an accident in the course of his employment on October 23, 1958. Sherron Kathryn (Davis) Watson had been adopted prior to the death of decedent, and the issue to be resolved is, "Can a minor child, who has been adopted, be an heir at law as defined by the descent and distribution statutes and a dependent of its natural father, as defined by the Workmen's Compensation Act?"

The State Industrial Court resolved this question in the affirmative and the guardians of the person and estate of Harry Thomas Davis, a minor and natural brother of the adopted child, Sherron Kathryn (Davis) Watson, appeal on the ground that he should have received all the benefits since he was the only legal dependent and heir of deceased at the time of his death.

The employer and insurance carrier admitted liability and only questioned the entitlement. The former wife of decedent claims no interest.

### Facts

The decedent was married to Jessie Ruth Davis and the above named children were born to them during wedlock. On November 13, 1951, Sherron, who was mentally ill, with the consent of her natural parents, was adopted by her natural grandparents. On November 26, 1951, decedent and his wife were divorced.

On October 23, 1958, decedent was killed and claims were filed by the guardians of the two minors for death benefits, each claiming to be heirs and dependents of decedent. After a hearing before the State Industrial Court, an order was entered which is in part as follows:

"That deceased left as his sole and only dependent heirs at law, and legal dependents, as defined by the Workmen's Compensation Law, his son, Harry Thomas (Tommy) Davis, age 17; and his mentally deranged minor daughter, Sherron Kathryn (Davis) Watson, age 13; that even though Sherron Kathryn (Davis) Watson was adopted to Mr. and Mrs. Harry Watson, Grant Vincent Davis, deceased, continued to make substantial contributions toward the care and support of said incompetent daughter, and that she and her guardian on her behalf had good reason to believe that he would continue such contributions if he had lived; and therefore Sherron Kathryn

·· (Davis) Watson is a legal dependent of deceased; * * *."

### Contentions

The petitioner contends that he is entitled to the entire award as the sole and only heir and legal dependent of deceased; that respondent is not an heir or dependent within the meaning of the Workmen's Compensation Act.

Respondent contends that her adoption did not remove her as an heir of her natural father (deceased), and did not release decedent from his legal obligation to support her and since decedent did make substantial contributions, she was his dependent within the meaning of the Workmen's Compensation Act.

### Conclusions

■ In order to participate in the award herein, the respondent, Sherron Kathryn (Davis) Watson, must not only be an heir at law of decedent as defined by the descent and distribution statutes, but also a dependent as defined by the Workmen's Compensation Act. See Fox-Vliet Wholesale Drug Co. v. Chase, Okl., 288 P.2d 391; and Capitol Steel & Iron Co. v. Fuller, 206 Okl. 638, 245 P.2d 1134. It therefore becomes necessary to determine if she meets both requirements and we will first ·consider the question relating to heirship.

The statutory rights of a child to inherit from its natural parents, after the natural parents have consented to its adoption and the adoption proceedings have been completed, have not been specifically determined by this Court. Such rights have been considered by other Courts and in 80 A.L.R. 1403, it is stated:

"The general rule, sometimes embodied in express statutory provisions, is that the right of a child to inherit from its natural parent is not affected by the fact of its having been adopted by another."

Following the above rule we find in 1 Am.Jur. 656, Sec. 57, the following statement:

"Consanguinity is so fundamental in Statutes of Descent and Distribution that it may only be ignored by construction when courts are forced so to do, either by the express terms of the statute or by inexorable implication. An adopted child is, in a legal sense the child both of its natural and of its adopting parents, and is not, because of the adoption, deprived of its rights of inheritance from its natural parents, unless the statute expressly so provides."

2 C.J.S. Adoption of Children § 63c, p. 454, states the proposition in the following manner:

"In the absence of a statute to the contrary, although the child· inherits from the adoptive parent, he still inherits from or through his blood relatives, or his natural parents."

More than twenty states have passed on the question of the right of an adopted child to inherit from its natural parents. In Sorenson v. Churchill, 51 S.D. 113, 212 N.W. 488, the Supreme Court of South Dakota held:

"Rev.Code 1919, §§ 208–210, relative to adoption, held not to limit right of adopted child to inherit from natural parents in accordance with section 701."

\*  \*  \*  \*  \*  \*

"* * * section 701, Rev.Code 1919, which, so far as material, is as follows:

"'If the decedent leave no surviving husband or wife, but leave issue, the whole estate goes to such issue. * * *'"

And in the body of the opinion, the court said:

"Neither by express statute, nor by necessary implication nor·by prior decisions of this court, nor, indeed, by the express holding in a like case by any court, are we compelled to ignore the demands of that blood right on which the statutes of descent are based. In fact, a great array of authority, from Justinian to the recent Minnesota case above cited, convinces us that the laws

of adoption do not so limit that part of section 701 Rev.Code 1919, above quoted, as to cause a child, on being adopted, to lose its right to inherit from its natural parent. Under the law of adoption, the natural parent and the adopting parent each must consent to the new relationship before the child can be legally adopted. By consent each is bound. The adopted child, the person principally affected by the transaction, has no choice and gives no consent. His natural parent, by his consent to his adoption loses his right to inherit from his natural son. But no one consents for the innocent and helpless subject of the transfer that he shall lose the right to inherit from his natural parent, whose issue, under section 701, he does not cease to be when the right to his control passes to another. Nor does he lose by adoption that right which the law of succession gives him, except when 'by the terms of express statute or by inexorable implication' the law of succession has been so limited and restricted."

In the case of In re Roderick's Estate, 158 Wash. 377, 291 P. 325, 326, 80 A.L.R. 1398, the Supreme Court of Washington said:

"The general rule is that: 'An adopted child is, in a legal sense, the child both of its natural and of its adopting parents, and is not, because of the adoption, deprived of its right of inheritance from its natural parents, unless the statute expressly so provides.' Section 26, p. 614, Vol. 1, Ruling Case Law."

For additional cases relating to the right of an adopted child to inherit from its natural parents, see: Villier v. Watson, 168 Ky. 631, 182 S.W. 869, L.R.A.1918A, 820; In re Carpenter's Estate, 327 Mich. 195, 41 N.W.2d 349; Hawkins v. Hawkins, 218 Ark. 423, 236 S.W.2d 733; In re Tilliski's Estate, 323 Ill.App. 490, 56 N.E.2d 481; In re Penfield's Estate, D.C.D.C., 81 F.Supp. 622; Holmes v. Curl, 189 Iowa 246, 178 N.W. 406; Roberts v. Roberts, 160 Minn. 140, 199 N.W. 581; Head v. Leak, 61 Ind. App. 253, 111 N.E. 952; In re Egley's Estate (Brewster v. Hall), 16 Wash.2d 681, 134 P.2d 943, 145 A.L.R. 821; In re Kay's Estate (Robson v. Stoltz), 127 Mont. 172, 260 P.2d 391; In re Sauer's Estate (Sauer v. Goetsch), 216 Wis. 289, 257 N.W. 28; Anderson's Estate, 23 Pa.Dist. & Co. 332; Sledge v. Floyd, 139 Miss. 398, 104 So. 163; Sears v. Minchew, 94 Ga.App. 126, 93 S.E.2d 748; Succession of Gambino, 225 La. 674, 73 So.2d 800; Coonradt v. Sailors, 186 Tenn. 294, 209 S.W.2d 859, 2 A.L.R.2d 880; In re Myres' Estate, 205 Misc. 880, 129 N.Y.S.2d 531; In re Benner's Estate, 109 Utah 172, 166 P.2d 257.

While some of the above cases were based on statutory provisions permitting the adopted child to inherit from its natural parents, the majority thereof are bottomed on the failure of the adopting statutes to specifically limit or prohibit the adopted child from inheriting under the statutes of descent and distribution.

Our statutes relating to adoption (Title 10 O.S.1951 Chapter 2), were in effect at the time respondent was adopted. These statutes were superseded by the Uniform Adoption Code in 1957, and petitioner contends that Section 60.16 of the new code shows a clear intent on the part of the Legislature to give an adopted child the full right of inheritance from its adoptive parents and to destroy its right to inherit from its natural parent if it had any rights.

We find it unnecessary to determine which statutory provisions would be applicable in the case at bar as neither the Uniform Adoption Code nor the previous enactments which were superseded by the new code contain any words or expressions, which, in any way, limit or prohibit the issue of a deceased natural parent, even though such issue may have been adopted by another, from inheriting from its natural parent. Although the new code may have enlarged the adoptive child's right of inheritance from its adoptive parents, we do not find a legislative intent to destroy the rights of an adopted child to inherit from its natural parents.

As previously stated, the rights of an adopted child to inherit from its natural parents have not been specifically determined by this Court. However, we do find judicial dictum in an Oklahoma case indicative of the right of an adopted child to inherit from its natural parents. In the case of In re Talley's Estate, 188 Okl. 338, 109 P.2d 495, 498, 132 A.L.R. 773, we quoted from the case of In re Klapp's Estate, 197 Mich. 615, 164 N.W. 381, L.R.A.1918A, 818, as follows:

" 'But it is argued, how can the child be relieved of its obligations to a natural parent and still retain its right to inherit? *The reason therefor lies in the fact that at the moment of birth the child's status is fixed by law; at birth the child becomes the issue of the parent, and is included within the provision of the statute which declares all issue shall inherit the property of their* parents. In the case of the natural father, the question whether the child shall become his heir is not subject to his assent or contract, and therefore the child's right to inherit from him is not subject to his election. *The law irrevocably fixes his status in that respect the moment he is born. In the one case, by no act of the parent, can he prevent the child becoming his heir. In the other case, the child cannot become his heir without his consent. One situation depends upon blood and birth;* the other upon consent and contract." (Emphasis ours.)

The Klapp case held that an adopted child may inherit from both his natural and adoptive parents, but where a child has been adopted the second time, it lost its right to inherit from his first adoptive parents. In the course of the discussion that court cited three cases wherein the adopted person inherited from the first adoptive parents although the second adoption took place prior to the death of the first adoptive parents, and distinguished those cases from the one under consideration.

With further reference to the same three cases, and employing our own language and reasoning, we said in the Talley case, supra:

"* * * A distinction which was overlooked in those cases, and which could well have been emphasized in the case of In re Klapp's Estate, supra, is that one cannot occupy the status of an adopted child to two different sets of adoptive parents at the same time, *while on the contrary he can be and is the adopted child of his adoptive parents and the natural child or 'issue' of his natural parents at the same time. When he is adopted he is still the natural son of his natural parents nevertheless, even though his control is taken from them.* When he is adopted the the second time is he still the adopted son of his first adoptive parents? Clearly not. It is no answer to this to say that the statute makes an adopted child, for the purpose of inheritance, the same as a natural child, for when he is adopted by the second adoptive parents he is no longer 'the adopted child' of the first adoptive parents. We do not believe that the legislature could have intended that he then remained 'a child so adopted', within the meaning of the statute. *But by no number of adoptions could he be said to lose his existence as the natural child or issue of his natural father.*

"Conceding that the second order of adoption did not 'revoke' the former order, or as the Michigan Court, probably for the lack of a better name, said, 'supersede' it, the fact is undeniable that it did something to the former status and relationship. Neither in theory, practice nor common sense was petitioner the adopted son of his first adoptive parents after his second adoption. *Having lost that relationship (a thing which by parallel he could not entirely do, at least as to blood, as to his natural parent) there was no longer any predicate upon*

which to base the conclusion that he would thereafter inherit from his first adoptive parents the same as if he had been their natural son." (Emphasis ours.)

■ The petitioner contends the expressions in the Talley case, supra, are merely the expression of opinion on a matter not germane to or necessary to the conclusion reached in the case and is therefore obiter dictum. We cannot sustain this conclusion. Although the issue in the Talley case was whether a child who had been adopted a second time could inherit from its first adoptive parent, it is noted the Klapp case, in addition to holding that a child, adopted for the second time, could not inherit from the first adoptive parents, it also held that an adoptive child could inherit from its natural parents. It therefore became necessary in the Talley case to draw a distinction between the two situations and in doing so, the expressions used with reference to the right of an adopted child to inherit from its natural parents, became and is, not obiter dictum, but judicial dictum and there is a wide difference between the two. Judicial dictum, while not binding on the court at a later date, is highly persuasive and should be given greater weight then obiter dictum. In the case of Crescent Ring Co., Inc. v. Travelers' Indemnity Co., 102 N.J.L. 85, 132 A. 106, 107, the Court of Errors and Appeals held:

"Obiter dictum is an expression of opinion by the court or judge on a collateral question not directly involved, or mere argument or illustration originating with him, while judicial dictum is an expression of opinion on a question directly involved, argued by counsel, and deliberately passed on by the court, though not necessary to a decision. While neither is binding as a decision, judicial dictum is entitled to much greater weight than the other, and should not be lightly disregarded."

In this connection also see Taylor v. Taylor, 162 Tenn. 482, 40 S.W.2d 393, and Chance v. Guaranty Trust Co. of New York, 164 Misc. 346, 298 N.Y.S. 17.

Therefore the judicial dictum in the Talley case that an adopted child may inherit from its natural parents, although not controlling, is entitled to be considered and given weight to our decision herein.

A later decision by this Court, Ex parte Moulin, 203 Okl. 99, 217 P.2d 1029, is distinguishable from the In re Talley case, supra, as the question of inheritance was not involved in the Moulin case and a construction of our descent and distribution statutes was neither appropriate nor necessary.

Considering the judicial dictum in the Talley case and finding no words or expressions in our adoption statutes which limit or prohibit respondent from inheriting from her natural father, we hold the adoption statutes do not preclude respondent from inheriting from her natural father. We will now consider our descent and distribution statutes.

Our descent and distribution statute, in so far as applicable to the case at bar is Title 84 O.S.1951 § 213, which provides, inter alia, that when any person having title to any estate, * * * dies without disposing of the estate by will, it descends and must be distributed in the following manner:

"* * * If the decedent leave no surviving husband or wife, but leaves issue, the whole estate goes to such issue, and if such issue consists of more than one child living, * * * then the estate goes in equal shares to the children living, * * *."

In McCoy v. Lewis, 166 Okl. 245, 27 P.2d 350, 351, we held:

"In its legal sense as used in statutes and wills and deeds and other instruments, issue means descendants, lineal descendants, offspring."

There are no words or expressions in our descent and distribution statutes which, in any way, limit or prohibit an issue of a decedent from inheriting from its natural parents, even though such issue may have

been adopted by another. By virtue of our descent and distribution statutes, respondent is entitled to her proportionate share of decedent's estate. The law grants her this right to inherit and there being no other law limiting or prohibiting her from inheriting by reason of her adoption, her right to inherit remains.

Therefore, we can only conclude that respondent not only was, but still is, an heir of her natural father under the laws of descent and distribution of the State of Oklahoma.

Having determined that respondent is an heir and entitled to inherit from her natural father, the next issue to be resolved is whether or not she was a dependent of her deceased father. In this connection, petitioner contends she was not a legal dependant by reason of the adoption and upon her being adopted the natural father was relieved from any and all moral or legal obligations; that if the decedent made any contributions for her support and maintenance, such were voluntary and gratuitous donations.

In the Workmen's Compensation Act, Title 85 O.S.1951 § 22, subd. 7, benefits are payable "to the dependents of the deceased employee as defined herein." Title 85 O.S.1951 § 3.1(1) provides: "The term 'Dependent' or 'Dependents' as used in this Act, shall mean and include the heirs at law of the deceased, as defined by the Descent and Distribution Statutes of Oklahoma."

In construing who are "dependents" of a deceased employee, this Court has never held that one could not be a dependent unless the deceased employee was legally obligated, as a matter of law, to support and maintain such dependent. In Fox-Vliet Wholesale Drug Co. v. Chase, supra, this court vacated an order allowing an award to a 25 year old man for the death of his mother. The award was not vacated because the mother was not legally obligated to support her 25 year old son, or that the son was not a legal dependent of his mother, but because there was no evi-

dence to show a dependency upon the decedent. In that case we held [288 P.2d 392]:

"In the Workmen's Compensation Act, the legislative expression that death benefits are payable 'to the dependents of the deceased employee as herein defined,' refers to persons who are heirs at law of the deceased as defined by the descent and distribution statutes and who are presently, or in reasonable future expectancy, relying on the said employee in whole or in part for necessary support and maintenance."

See also Ticer v. Ross, Okl., 277 P.2d 1003, and Sample v. State Industrial Commission, Okl., 262 P.2d 889.

In the case at bar the State Industrial Court specifically found that the decedent "continued to make substantial contributions toward the care and support of said incompetent daughter, and that she and her guardian on her behalf had good reason to believe that he would continue such contributions if he had lived; and therefore Sherron Kathryn (Davis) Watson is a legal dependent of deceased."

In Gross Drilling Co. v. Lay, Okl., 318 P.2d 869, 870, we held:

"A finding by the State Industrial Commission of dependency under the Death Benefit provision of the Workmen's Compensation Act will not be disturbed on review where reasonably supported by competent evidence."

The facts disclose Sherron is mentally ill and her adoptive parents exhausted their resources, including their life savings, in an effort to bring about her restoration to health. The evidence also shows that decedent made substantial contributions for respondent's support after the adoption and there is competent evidence reasonably supporting the finding of the State Industrial Court that she was a dependent of decedent as defined by the Workmen's Compensation Act.

Award sustained.